UNITED STATES of America,
Plaintiff-Appellant,

v.

Clement KOLODZIEJ,
Defendant-Appellee.

No. 82–1076.

United States Court of Appeals,
Fifth Circuit.

June 6, 1983.

Rehearings Denied Aug. 22, 1983.

·Edward C. Prado, U.S. Atty., Sidney Powell, Asst. U.S. Atty., San Antonio, Tex., Archie Carl Pierce, Asst. U.S. Atty., Austin, Tex., for plaintiff-appellant.

Roy Barrera, Rend J. Riklin, San Antonio, Tex., for defendant-appellee.

Before WISDOM, RUBIN and TATE, Circuit Judges.

WISDOM, Circuit Judge:

This is an appeal by the United States from two orders of the district court granting motions to suppress. The questions we review on appeal are (1) whether the trial court erred when it ruled that telephone conversations placed between the defendant and a co-defendant were taped without the latter's voluntary consent, and (2) whether the record supports the court's conclusion that evidence seized from the defendant's home was taken in violation of his constitutional rights. We reverse as to the first question, affirm as to the second question, and remand the case.

## I.

After first obtaining a search warrant, on January 14, 1981, agents of the Drug Enforcement Administration and the Texas Department of Public Safety Narcotic Service entered the residence of Loren and Jody Caddell in Amarillo, Texas. They discovered Jody Caddell weighing and packaging one-and-one half pounds of cocaine. She was then pregnant, and alone with her two-year-old child. At roughly the same time, her husband was arrested at his place of business. The parties disagree about what happened after the officers arrived at the Caddell residence. Jody Caddell testified at the suppression hearing that it was her impression that the agents threatened to arrest her and to turn her child over to the welfare authorities unless she agreed to cooperate. The government maintains, however, that the arresting officers advised her that the standard procedure in such cases called for placing her child with the Department of Human Resources until a family member could come and get the child. The agents decided, however, not to take her into custody because of her physical condition, and after Loren Caddell had been returned to his home, that evening both Caddells agreed to cooperate with the agents. The cooperation first took the form of oral and written statements in which they identified the defendant, Clement J. Kolodziej, as their drug supplier. Later that night, the Caddells were asked to and agreed to place several telephone calls to the defendant to prompt him to make incriminating statements.

As a result of the Caddells' cooperation, Kolodziej was indicted and a warrant for his arrest was issued. He was arrested on February 17, 1981, inside the front doorway of his home in San Marcos, Texas. He offered no resistance and was unarmed. Following the arrest, the officers conducted a cursory safety check of the house and found an open film cannister containing marijuana on the kitchen counter approximately 15 to 20 feet from where Kolodziej was arrested. The agents asserted that the safety check was necessary for their protection because they had earlier learned from an informant, Donnie Mitchell, that the defendant was known to carry a gun and occasionally worked with a partner named "Barney". Based upon the marijuana discovered during the check and the information obtained from the Caddells and Mitchell, the officers obtained a search warrant. During the investigation of Kolodziej's home, automobile, and truck, the agents found fifteen to twenty pounds of marijuana, a .357 magnum pistol, a quantity of quaaludes, and $61,000 in cash.

Kolodziej was charged with possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a) and 846. He was also charged, together with Loren and Jody Caddell, with conspiracy to possess cocaine and marijuana with intent to distribute. The district court conducted a pretrial suppression hearing and found that although Loren Caddell had voluntarily consented to the tape recordings, Jody Caddell's cooperation was "coerced and induced by the threat to take her children from her." Concluding that the voluntariness mandated by 18 U.S.C. § 2511(2)(c) was not present, the court suppressed the conversations between the defendant and Jody Caddell. The district court also found that the search warrant was not supported by probable cause, and suppressed all evidence discovered during the investigation of Kolodziej's home. We first examine the propriety of the district court's conclusion that Jody Caddell

did not voluntarily consent to make the monitored telephone calls.

## II.

Title 18 U.S.C. § 2515 mandates the suppression of all evidence gathered in contravention of section 2511, which makes it illegal to intercept any wire or oral communication.[1] Section 2511(2)(c) sets forth an exception, which provides that:

It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

▆▆▆ The consent exception to 18 U.S.C. § 2511 is no new subject to federal courts. We have held that for a party's consent to be valid under § 2511(2)(c), it must be voluntary and uncoerced. *United States v. Juarez,* 5 Cir.1978, 573 F.2d 267, 278, *cert. denied,* 1978, 439 U.S. 915, 99 S.Ct. 289, 58 L.Ed.2d 262; *United States v. Osser,* 3 Cir. 1973, 483 F.2d 727, 730, *cert. denied,* 1973, 414 U.S. 1028, 94 S.Ct. 457, 38 L.Ed.2d 321. The burden of proving voluntariness is on the government. *United States v. Napier,* 5 Cir.1971, 451 F.2d 552, 553. This burden can usually be met by showing that the informant placed the telephone call knowing that it would be monitored. *United States v. Glickman,* 9 Cir.1979, 604 F.2d 625, 633–34, *cert. denied,* 1980, 444 U.S. 1080, 100 S.Ct. 1032, 62 L.Ed.2d 764; *United States v. Bonanno,* 2 Cir.1973, 487 F.2d 654, 658. When, however, there is an allegation of coercion, the government must show that there has been no undue pressure, threats, or improper inducements. *See United States v. Kirk,* 8 Cir.1976, 534 F.2d 1262, 1273, *cert denied,* 1977, 433 U.S. 907, 97 S.Ct. 2971, 53 L.Ed.2d 1091; *United States v. Juarez,* 573 F.2d at 278. Raised expectations and hopes for leniency do not amount to coercion or improper inducement. *United States v. Llinas,* 5 Cir.1979, 603 F.2d 506, 508, *cert. denied,* 1980, 444 U.S. 1079, 100 S.Ct. 1030, 62 L.Ed.2d 762; *United States v. Juarez,* 573 F.2d at 278.

▆▆▆ This Court's task on appeal is limited to determining whether there is sufficient evidence to support the district court's conclusion, and we must accept that court's findings of fact on a motion to suppress unless they are clearly erroneous. *United States v. Llinas,* 603 F.2d at 508. After a lengthy pretrial suppression hearing, the district court concluded that the government failed to carry its burden of proof. The court found that "Jody Caddell's consent to the making of the subject telephone calls and the monitoring of the subject telephone conversations was not voluntary, as

---

1. 18 U.S.C. § 2515 provides:

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

18 U.S.C. § 2518(10)(a) provides further:

Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization or approval.

Such motion shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter. The judge, upon the filing of such motion by the aggrieved person, may in his discretion make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determines to be in the interests of justice.

contemplated by 18 U.S.C. § 2511," and that she "was coerced and induced by the threat to take her children from her and place them with welfare if she did not cooperate with them". Our review of the record convinces that there is insufficient evidence to support the district court's determination of involuntariness. Contrary to the court's findings, Jody Caddell testified that the arresting officers did not specifically threaten to take her child away from her if she did not cooperate; she merely felt that she had to go along with their requests. Her decision to place the telephone calls to the defendant, as the following colloquy demonstrates, was based on her subjective reaction to the situation in which she found herself, to the fact that, as she put it, she had been caught "red-handed".

DEFENSE COUNSEL: What did they tell you?

MS. CADDELL: They—well, they were talking to each other at first when I first heard about it. They were saying that they had called somebody to come and get the kid. And I was pregnant, and I was real upset, and they had told me that—you know, I should cooperate with them and it would make things easier for me. Easier for the baby and that they would not take me to the police station and put me in jail.

DEFENSE COUNSEL: All right. Is that statement that was made to you, did that then cause you to cooperate with them?

MS. CADDELL: Well, it had a great impact on whether I did or not. I can't say that that was the necessary reason, but it was definitely one of them.

DEFENSE COUNSEL: Did they say anything to you about what would or would not happen to the child—the child that was going to be born to you if you went to the penitentiary?

MS. CADDELL: No, sir.

DEFENSE COUNSEL: Was any discussion of that type had at all?

MS. CADDELL: No sir; not that I recall.

DEFENSE COUNSEL: Was any statement made to you that they were going to take your daughter Sarah from you if you did not cooperate?

MS. CADDELL: I don't know if they specifically told me that they were going to take her if I did not cooperate, but that was the impression that I got.

DEFENSE COUNSEL: From what they had said?

MS. CADDELL: Yes, sir.

DEFENSE COUNSEL: And let me ask you this: But for they having made these statements to you, and but for you having believed the intents they had in making these statements, would you of your own volition have called Mr. Kolodziej for them?

MS. CADDELL: You mean if nothing had happened to me?

DEFENSE COUNSEL: If these gentlemen had not made these statements to you as they were made to you and prevailed upon you to call, would you have called on your own?

MS. CADDELL: I honestly don't know. (R.T. 150–152)

Jody Caddell further testified that the agents were not rude or hostile. Moreover, both she and her husband stated that her reason for cooperating was to help herself with regard to the criminal charges against her, and to help her husband get out on bond.

■ The facts of this case do not point to the type of undue pressure, threats, or improper inducement necessary to render consent involuntary. Involuntariness is present if there are threats or promises of illegitimate action. *Kent v. United States,* 1 Cir.1959, 272 F.2d 795, 799. Jody Caddell clearly felt threatened by the presence of the arresting officers in her home, and by what might happen if she refused to cooperate. The officers' statements to her were not illegitimate, however; they were true. If both she and her husband had been taken into custody, then some provision obviously would have had to have been made for her daughter. And faced with her request that

they not get in touch with her parents, the officers had little choice but to inform Ms. Caddell that the child would be placed with the welfare authorities. We are convinced from our examination of the record that Jody Caddell voluntarily consented to telephone Kolodziej knowing that the conversations would be taped. When she placed the first telephone call, it was seven hours after the alleged threats had been made, and she had already been informed that she would not be taken into custody. Her decision to cooperate, made after several hours of sober reflection, was thus motivated by a desire to ameliorate the situation of her entire family. Such a desire does not vitiate the consent to cooperate. As the Court stated in *United States v. Horton,* 7 Cir. 1979, 601 F.2d 319, 322–23, *cert. denied,* 1979, 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 197:

> The fact of the possibility of penalties, whether or not they could actually have been visited if cooperation had not occurred, is a preexisting condition at the time the decision to cooperate is made. That which motivates the cooperation is the desire to change in a favorable manner the previously existing possibility, if not probability, of penalties. This does not in our opinion ... constitute anything in the nature of overbearing of the will. There is no one in a better position than the informant to know whether there are facts which could be the basis of penalties. The situation of consent, of course, might well be different if the consensual cooperation had been secured by actual threats of a physical nature or of prosecutorial action which had no realistic foundation. That is not the situation in the case before us.

Like the informant's consent in *Horton,* Jody Caddell's consent to place the taped telephone calls to the defendant was voluntarily given. There is no evidence that her cooperation was secured by actual threats of a physical nature or of prosecutorial action which had no realistic foundation. The district court's order suppressing the tapes is, therefore, reversed.

III.

The trial court found that the search warrant's supporting affidavit, which referred to the marijuana found at the time of Kolodziej's arrest and the hearsay statements of the Caddells and Mitchell, did not provide probable cause to search the defendant's house. Accordingly, it suppressed the fruits of the search. The court made two findings critical to its decision to grant the motion. It determined, first, that the information regarding the marijuana should be deleted from the affidavit because the security sweep during which it was discovered was not motivated by safety reasons. Second, the court examined the remaining portion of the affidavit, the hearsay statements of the co-conspirators, and concluded that the statements did not meet the reliability requirements of *Aguilar v. Texas,* 1964, 378 U.S. 108, 109, 84 S.Ct. 1509, 1510, 12 L.Ed.2d 723, 725. We initially review the government's contention that the district court erred when it held that the arresting officers did not have probable cause to believe their safety was threatened.

### A. The Cursory Safety Check

In *Chimel v. California,* 1969, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, the Supreme Court articulated the now well-settled principle that while an arresting officer may search a suspect and the area within his immediate control, he may not routinely search other rooms absent some exception to the search warrant requirement. The Court's rationale was that "[a] gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested."

> [But] [t]here is no comparable justification ... for routinely searching any room other than that in which an arrest occurs —or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. The 'adherence to judicial

processes' mandated by the Fourth Amendment requires no less. 395 U.S. 763, 89 S.Ct. 2040, 23 L.Ed.2d 694.

One of the "well-recognized exceptions" to the requirement of a search warrant, followed in this and a majority of the circuits, is the so-called "cursory safety check exception". The realities and practicalities of law enforcement dictate that in certain emergency situations strict adherence to constitutional safeguards against intrusion into the home may be excused. We recently stated the exception as follows:

> Arresting officers have a right to conduct a quick and cursory check of the arrestee's lodging immediately subsequent to arrest—even if the arrest is near the door but outside the lodging—where they have reasonable grounds to believe that there are other persons present inside who might present a security risk.

*United States v. Sheikh*, 5 Cir.1981, 654 F.2d 1057, 1071, *cert. denied*, 1982, 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (citations omitted). *See also United States v. Jackson*, 5 Cir.1983, 700 F.2d 181 at 189; *United States v. Diecidue*, 5 Cir.1979, 603 F.2d 535, 558–59, *cert. denied sub nom*, 1980, *Antone v. United States*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781; *United States v. Bowdach*, 5 Cir.1977, 561 F.2d 1160, 1168–69. The government argues that the district court erred in suppressing the marijuana found in plain view during the course of the defendant's arrest. It maintains that a protective security sweep, or cursory safety check, was necessary in this case because the arresting officers had learned from an informant, Donnie Mitchell, that Kolodziej occasionally was known to carry a firearm and that he conducted his drug transactions with a man named "Barney". Because one of the arresting officers was lawfully in the kitchen when he observed the open film canister containing marijuana, the drugs were properly seized under the "plain view doctrine" and should not have been suppressed. *See Coolidge v. New Hampshire*, 1971, 403 U.S. 443, 465–66, 91 S.Ct. 2022, 2037–2038, 29 L.Ed.2d 564; *United States v. Diecidue*, 603 F.2d at 559.

We are constrained to disagree with the government. Our review of the record convinces us that the district court did not err when it ruled that "[t]he Court heard insufficient evidence to indicate the officers making the arrest were operating under the assumption their safety was in jeopardy". To fall within the cursory safety check exception, the government must show that there was "a serious and demonstrable potentiality for danger". *United States v. Smith*, 5 Cir.1975, 515 F.2d 1028, 1031 (per curiam), *cert. denied*, 1976, 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 322. The arresting officers must "have reasonable grounds to believe that there are other persons present inside who might present a security risk". *United States v. Sheikh*, 654 F.2d at 1057. What are "reasonable grounds" is, of course, no easy question. A review of the cases in which this Court has upheld the exercise of a safety check, however, reveals that each presented a more compelling threat of danger. In *McGeehan v. Wainright*, 5 Cir.1976, 526 F.2d 397, 398–400 (per curiam), *cert. denied*, 1976, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823, the Court upheld the safety check of a trailer where an armed robbery involving the use of a shotgun had occurred one hour earlier and several suspects emerged without surrendering their weapons, because it was feared that other suspects were still inside. Similarly, in *United States v. Cravero*, 5 Cir. 1976, 545 F.2d 406, 417–18, *cert. denied*, 1977, 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377, a security sweep was found justifiable where the defendant and a co-conspirator were arrested in possession of a loaded pistol, and suspicious noises were heard in an adjoining room. A cursory safety check was sanctioned in *United States v. Looney*, 5 Cir.1973, 481 F.2d 31, 32–33, *cert. denied*, 1973, 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 476, after the Court noted several considerations not present in the case before us: the fact that the house was located in an unfamiliar rural area; the lateness of the hour; the heinous nature of the crime (attempted assassination of a federal judge); and the presence of two loaded rifles within plain view. In *United States v. Jackson*, 5 Cir.

1983, 700 F.2d 181 at 189, we concluded that a warrantless search of a motel room was proper because the arresting agents had no way of knowing that the two suspects, apprehended outside their room, were the only people involved in the crime, given that a fellow officer had informed them that *at least* two armed men had committed the offense. *See also United States v. Bowdach,* 561 F.2d at 1169; *United States v. Smith,* 515 F.2d at 1031.

█ A cursory safety check is permissible "when the circumstances provide, at the least, probable cause to believe that a serious threat to safety is presented." *United States v. Cravero,* 545 F.2d at 418 (*quoting United States v. Smith,* 515 F.2d at 1031). If circumstances indicating danger are present, arresting officers are entitled to look "for *people* that might be hiding and ... [pose] a danger ..., and not to look for *things*". *United States v. Looney,* 481 F.2d at 33. We conclude that no circumstances are present in this case which would have led a reasonable man to believe that his safety was endangered. The only evidence offered by the government to justify the security sweep was the testimony of one of the arresting officers that he thought there was a possibility that a man named "Barney", who worked with the defendant, might be in the residence at the time of the arrest, and that Kolodziej occasionally carried a .357 magnum pistol. No evidence was presented to show how the officers had

reason to believe that Barney was there, in fact had ever been there, or was dangerous. Drug dealers frequently have accomplices, but that fact alone does not justify a warrantless search. That the defendant carried a firearm is also insufficient. At the time the officers made the safety check, Kolodziej was already in custody, unarmed, handcuffed, and clearly no threat to the half-dozen agents present at the arrest.

█ Because the arresting officers encountered no serious threat of danger, there was no exigent circumstance excusing the requirement of a search warrant. The officer's presence in the kitchen at the time he discovered the marijuana was thus unjustified, rendering the plain view doctrine inapplicable.[2] *See Coolidge v. New Hampshire,* 1971, 403 U.S. 443, 465–66, 91 S.Ct. 2022, 2037–2038, 29 L.Ed.2d 564; *Harris v. United States,* 1968, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067; *United States v. Diecidue,* 603 F.2d at 559. Any reference to the drugs discovered during the safety check was, therefore, properly stricken from the affidavit.

### B. *The Facial Sufficiency of the Affidavit*

Even without considering the marijuana found in Kolodziej's home on the day of the arrest, the government argues that there was sufficient probable cause remaining in the affidavit to support the search warrant.[3] The district court erred, therefore,

2. A finding that circumstances indicating danger were present at the time of an arrest, and a cursory safety check was therefore justified, does not render all evidence discovered during a security sweep admissible. The evidence must be in *plain view* and the officer's investigation must be *cursory*. A cursory check is a superficial one, limited in both scope and duration. It is rapidly undertaken to look for people who might pose a threat, with little attention paid to detail. "The [Fourth] Amendment's protection is not diluted in those situations where it has been determined that legitimate law enforcement interests justify a warrantless search; the search must be limited in scope to that which is justified by the particular purposes served by the exception." *Florida v. Royer,* —— U.S. ——, ——, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983).

Although we need not reach the issue, we note in passing that the district court's finding that "[a]n opaque film canister is not the type of object which is suspect and subject to seizure" is not clearly erroneous.

3. The full text of the affidavit is as follows: On January 23, 1981, S/A Fred B. Thomas and Dept. of Public Safety Investigator Troy Braswell initiated an investigation into the narcotics trafficking of Clement Kolodziej. On January 24, 1981, this investigation resulted in the seizure of approximately 24 ounces of cocaine, approximately 100 pounds of marihuana, a quantity of Methaqualone tablets, and the seizure of $6,160.00. The investigation further resulted in the arrest of Loren Caddell, Jody Caddell, and Donnie Mitchell. Post arrest statements individually made by all of the above defendants, each

in reaching the opposite conclusion and in suppressing the fruits of the search. We disagree.

The affidavit in this case establishes that on January 23, 1981, the affiant and Department of Public Safety Investigator Troy Braswell initiated an investigation into the activities of Clement Kolodziej. On January 24, 1981, Loren Caddell, Jody Caddell, and Donnie Mitchell were arrested and 24 ounces of cocaine, 100 pounds of marijuana, and approximately $6,100 were seized. Each stated that Kolodziej had been his or her major supplier of cocaine and marijuana for the past year, and that he had been paid from $500,000 to $1,000,-000 for the illegal drugs. Mitchell further stated that Kolodziej kept this currency in the trunk of his 1979 BMW automobile.

 The standard for determining whether probable cause exists to issue a search warrant is if "the magistrate was provided with sufficient reliable information from which he could reasonably conclude that the items sought in the warrant

were probably at the location sought to be searched." *United States v. Morris,* 5 Cir. 1981, 647 F.2d 568, 573. *See also United States v. Chester,* 5 Cir.1976, 537 F.2d 173, 175–76, *cert. denied,* 1977, 429 U.S. 1099, 97 S.Ct. 1120, 51 L.Ed.2d 548. An issuing magistrate's determination of probable cause is typically entitled to a presumption of validity. *United States v. Allen,* 5 Cir. 1979, 588 F.2d 1100, 1126, *cert. denied sub nom, Perkins v. United States,* 1979, 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071. That is not the case, however, when, as here, the magistrate never considered the affidavit purged of its tainted material. *See United States v. Namer,* 5 Cir.1982, 680 F.2d 1088, 1095 n. 12; 2 W. LaFave, *Search and Seizure* § 4.4, at 68 (1978). In *Aguilar v. Texas,* 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, the Supreme Court established a two-pronged analysis for evaluating the facial sufficiency of an affidavit based on a hearsay account of an informer's tip.[4] This Court has interpreted *Aguilar's* two requirements as follows:

corroborating the other, revealed that Clement Kolodziej is a resident of San Marcos, Texas, and he has been their major source of supply for cocaine, marihuana, and methaqualones for the past year. Further statements made by the cooperating co-conspirators reveal that approximately $500,000 and $1,000,000 cash U.S. currency had been paid to Kolodziej as payment for narcotics supplied by Kolodziej. Cooperating co-conspirator Donnie Mitchell stated to S/A Thomas and Investigator Braswell that Clement Kolodziej kept large sums of U.S. Currency in the trunk of his 1979 BMW license number 1981 Texas, UCY 307, and in safety deposit boxes. These funds were proceeds from the narcotic transactions and were maintained in the vehicle and safety deposit box to avoid detection of law enforcement officials.
On February 13, 1981, the above information was presented to the Federal Grand Jury, Western District of Texas, Austin Division, Austin, Texas. Indictments were returned against defendants Clement Kolodziej, Loren Caddell, and Jody Caddell. Donnie Mitchell is an unindicted co-conspirator.
On February 17, 1981, S/A Fred B. Thomas, accompanied by DPS Narcotics Investigator Troy Braswell, DPS Investigator Charles Goforth, DPS Investigator Jess Hooper, San Marcos Police Dept. Officer Paul Bataglia went to the residence of Clement Kolodziej, located at 1614 Mockingbird Drive, San Mar-

cos, Hays County, Texas, armed with arrest warrant for Kolodziej. At the time of the execution of the arrest warrant, DPS Investigator Troy Braswell personally observed a quantity of marihuana on the kitchen counter of the residence within the reach and control of Kolodziej.

4. In finding that the affidavit present in *Aguilar* could not constitutionally support the magistrate's probable cause determination, the Court held:
 Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, . . . the magistrate must be informed of [1] some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and [2] some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was 'credible' or his information 'reliable.' Otherwise, 'the inferences from the facts which lead to the complaint' will be drawn not 'by a neutral and detached magistrate,' as the Constitution requires, but instead, by a police officer 'engaged in the often competitive enterprise of ferreting out crime,' . . . or, as in this case, by an unidentified informant.
 378 U.S. at 114, 84 S.Ct. at 1514, 12 L.Ed.2d at 729 (citations omitted).

The essence of *Aguilar* is that the affidavit must state facts which allow the magistrate to determine independently whether probable cause for the issuance of a warrant exists. These facts must enable the magistrate to make two distinct determinations. First, the magistrate must be presented with the facts from which the informant concluded that some criminal activity was taking, or had taken place. He must then assess the underlying facts to determine whether or not the inference of criminal activity is warranted. Second, the magistrate must be presented with facts which establish the probable credibility of the informant or the reliability of his information. Thus, if either of *Aguilar*'s requirements is not met, the affidavit cannot establish probable cause.

*United States v. Martin,* 5 Cir.1980, 615 F.2d 318, 323–24 (citations omitted).

 Although the government presents a persuasive case that *Aguilar*'s second requirement is satisfied,[5] we conclude that it has failed to shoulder its burden of demonstrating the first. The affidavit states that the Caddells and Mitchell identified Kolodziej as their major drug supplier, and that they had paid him large sums for drugs in the past. It also states, in pertinent part, that "[c]ooperating co-conspirator Donnie Mitchell stated to S/A Thomas and Investigator Braswell that Clement Kolodziej kept large sums of U.S. Currency in the trunk of his 1979 BMW, license number 1981 Texas, UCY 307, and in safety deposit boxes. These funds were proceeds from the narcotic transactions and were maintained in the vehicle and safety deposit box to avoid detection of law enforcement officials." This statement falls short of providing any specific fact or circumstance which would indicate how Mitchell came to know where the money was kept, or that it was earned in illicit drug transactions. It is also silent on the narcotics themselves: Did the informant know that the defendant kept marijuana and quaaludes in his house, and where in the residence he kept them? If so, how?

Like the district court, we read the informant's tip as providing nothing more than a conclusion that the defendant had engaged in, and was engaging in criminal conduct. Such a tip, absent some of the underlying circumstances on which the informant based his conclusion, cannot provide the probable cause to search a defendant's home, automobile, and truck. An "affidavit cannot establish probable cause unless it establishes a factual basis for crediting the informant's conclusion". *United States v. Martin,* 615 F.2d at 324.

### IV.

Accordingly, the judgment of the district court suppressing the marijuana discovered during the security sweep and the fruits of the search is AFFIRMED. The district court's order suppressing the tape recordings is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.

---

5. The affidavit does not contain an affirmative allegation that any of the three informants was known to be reliable, as *Aguilar*'s second prong requires, but reliability can be inferred from the fact that the tips corroborated one another, and were against the informants' penal interests. *See U.S. v. Martin,* 615 F.2d at 325–27; *Williams v. Maggio,* 5 Cir.1982, 679 F.2d 381, 391.