**UNITED STATES of America**

**v.**

**Bryan MAXWELL.**

**Crim. No. H–89–336.**

United States District Court,
S.D. Texas,
Houston Division.

Feb. 12, 1990.

Bert Isaacs, Asst. U.S. Atty., Houston, Tex., for plaintiff.

Thomas J. Bevans, Houston, Tex., for defendant.

## OPINION ON SUPPRESSION OF EVIDENCE

HUGHES, District Judge.

The question in this case is whether the evidence seized during a warrantless search should be suppressed. The search had two distinct phases: an initial sweep and later searches of the building while agents were in the process of obtaining a warrant. Because the evidence was seized through an unjustified search, it must be suppressed.

### 1. *Background.*

Agents of the Drug Enforcement Administration were investigating Bryan Maxwell for manufacturing and distributing methamphetamine. Maxwell operates a tire shop in the northern suburbs of Houston. The chronology on September 7 and 8, 1989, is:

| | | |
|---|---|---|
| 1) | About 2:30 pm | Three DEA agents begin surveillance of Maxwell and the tire shop |
| 2) | About 4:15 pm | The DEA's electronically monitored informant enters the tire shop |
| 3) | About 5:00 pm | Eleven additional officers arrived |
| 4) | About 7:15 pm | Maxwell is arrested outside the tire shop without incident |
| 5) | About 7:30 pm | An initial sweep is conducted, and Agent Castaneda leaves to get a warrant |
| 6) | About 11:30 pm | Hendricks is taken into the tire shop and questioned |
| 7) | About 7:30 pm to 1:07 am | Multiple searches of the tire shop |
| 8) | 1:07 am | The search warrant is issued and executed |

Uncontradicted testimony of disinterested witnesses shows the agents continued to occupy the tire shop either intermittently, or continuously, during the more than five hours between Maxwell's arrest and the arrival of the warrant.

### 2. *Issues.*

There are three issues to be resolved. First, whether the government had a legal justification for a protective sweep; sec-

ond, whether the later searches resulted in illegal evidence; and third, whether the evidence illegally seized should be admissable because its discovery was inevitable.

### 3. Warrantless Searches.

■ The Constitution prohibits unreasonable searches, and searches without a warrant are presumptively unreasonable. For a warrantless search to be legal, the government must prove these elements to be present:

(a) Probable cause;

(b) A warrant was being obtained; and

(c) An exigent circumstance.

*United States v. Shima*, 545 F.2d 1026, 1028 (5th Cir.1977); *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 3389, 82 L.Ed.2d 599 (1984).

Maxwell has stipulated to the existence of probable cause and to the obtaining of a warrant. Only the presence of an exigent circumstance needs to be considered.

### 4. Exigent Circumstances and the Sweep.

■ The government contends that the possibility that Maxwell accomplices remained in the tire shop after Maxwell's arrest created a danger to the arresting agents and the possibility that evidence would be destroyed. Either threat would sometimes be an exigent circumstance authorizing a warrantless protective sweep, if the agents' belief that the threat existed was reasonable, but evidence to support the agents' belief is lacking.

■ A warrantless search is justified when it allows law enforcement officers to arrest without surrendering their safety and when the destruction of property intended to be seized is imminent. *Vale v. Louisiana*, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1969); *United States v. Bowdach*, 561 F.2d 1160, 1169 (5th Cir.1977). *United States v. Jeffers*, 342 U.S. 48, 52, 72 S.Ct. 93, 95–96, 96 L.Ed. 59 (1951); *McDonald v. United States*, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948).

The standard the government must satisfy to prove an exigent circumstance existed is that of a reasonable belief by a person in a similar situation. To fall within the protective sweep exception, the government must demonstrate that, before entering the tire shop, the agents had reasonable and particular grounds for believing their safety was in jeopardy from "a serious and demonstrable potentiality for danger." *United States v. Smith*, 515 F.2d 1028, 1031 (5th Cir.1975) (per curiam), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 322 (1976). Speculative assumptions of evidence destruction and unsubstantiated, generalized beliefs about the presence of dangerous accomplices are not reasonable grounds. *Segura*, 104 S.Ct. at 3391. The agents must have articulated a reasonable basis for believing others in the tire shop were a safety threat and destroying evidence. *Kirkpatrick v. Butler*, 870 F.2d 276 (5th Cir.1989).

A cursory safety check is permissible when the circumstances provide, at the least, probable cause to believe that a serious threat to safety is presented. *United States v. Kolodziej*, 706 F.2d 590, 597 (5th Cir.1983) (quoting *United States v. Cravero*, 545 F.2d 406, 418 (5th Cir.1976), *cert. denied*, 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977)). When Kolodziej, a suspected drug dealer, was arrested inside his home by DEA agents, the agents performed a cursory check of his home simply because Kolodziej was known to carry a gun and occasionally worked with a partner. The court held that "no circumstances are present in this case which would have led a reasonable man to believe that his safety was endangered." *Kolodziej* 706 F.2d at 597.

The government's surveillance of Maxwell and the tire shop lasted over ten hours. He had been under the watchful eye of fourteen law enforcement officers, and the government had even sent a wired informant into the shop. The informant talked to Maxwell for about an hour and was extensively debriefed by agents afterwards. A reasonable person would have known that Maxwell had been the only person present in the tire shop when he was later arrested outside. There was no

revelation of the presence of contraband, or of any evidence at all, inside the shop. This knowledge eliminated all chances of evidence destruction and any fear of violence that faced the agents, and negates the existence of an exigent circumstance. *United States v. Carrion*, 809 F.2d 1120, 1129 (5th Cir.1987); *Bowdach*, 561 F.2d at 1169.

The government offered only the testimony of the agents to justify the sweep. The agents testified it was a mere possibility that others in the shop were a threat to their safety, that the evidence was in danger of being destroyed, and that "cooking" drugs were in danger of exploding. No evidence showed that the agents had reason to believe that anybody else was there, that evidence was present, or that there was a cook in progress. In fact, at the time the agents made the sweep, Maxwell was already in custody outside the shop, unarmed, handcuffed, and clearly no threat to the fourteen law enforcement officials present at the arrest. The agents supported their sweep with nothing more than the generalization that crooks are dangerous.

5. *Inevitable Discovery*

■ The government's last argument for allowing the evidence despite its illegal source is that the evidence seized would have been discovered inevitably through lawful means. *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984). *Nix* involved the suppression of incriminating statements the defendant made to a police officer who talked to him about the sadness of the consequences of the yet unfound body, which ultimately led to the discovery of a murder victim's body. Although the police officer was not to interrogate the defendant, the court found the discovery inevitable and held that the defendant's statements leading to discovery of the body were admissible because a search team, looking for the body, would have ultimately found it, regardless of the defendant's aid.

A conviction should not be set aside if it would have been obtained without police misconduct. *Nix*, 104 S.Ct. at 2510. The Sixth Amendment exclusionary rule is designed to protect the right to a fair trial by preserving the adversary process in which the reliability of proffered evidence may be tested in cross-examination and to protect the right against self-incrimination from being indirectly evaded. *Id.*

The warrantless search is a wrong completed when it occurs, and is not justified by the government's goal of catching drug manufacturers. The exclusionary rule is the only deterrent available to victims of illegal searches. The remedy of monetary damages is unavailable, under current interpretation of the Constitution, to redress the damage caused by the search or to deter future illegal searches. While the stain of minor police misconduct should not ruin the otherwise sound fabric of the government's case, it will not clothe blatant law enforcement misconduct in a clean suit.

Law enforcement is a two way street: If it is important that Maxwell be apprehended and convicted, it is also important that law enforcement officers not engage in illegal activity in their efforts to apprehend and convict him. The rule that protective sweeps, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant, governs this case. *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). The government has failed to demonstrate that one of these exceptions exists in this case.

6. *The Later Searches.*

■ Even if the court were to find that the agents' initial sweep was justified, the evidence clearly establishes the later searches that occurred before the warrant arrived were unjustified by any exigent circumstance, and the evidence seized should be excluded as fruit derived from those illegal searches.

■ Evidence seized in a sweep is only admissible if these elements can be satisfied:

(a) The search must be limited in scope and duration to that which is justified by the circumstance;

(b) The search must only be used to preserve the status quo;

(c) The evidence must be in plain view of the agents; and

(d) The agent's examination must be cursory.

*Kolodziej,* 706 F.2d at 597; *Carrion,* 809 F.2d at 1129; *Segura,* 104 S.Ct. at 3389; *Bowdach,* 561 F.2d at 1169. The search must be a superficial one, limited in scope, intensity, and duration; the agents are permitted only to wait for the warrant before looking for evidence.

The government has failed to show that its search was superficial. Testimony, from two disinterested witnesses, confirms the agents conducted thorough, zealous intrusions while waiting for the warrant. The agents rummaged around the entire shop examining photographs and other papers during much of the five hours between Maxwell's arrest and the appearance of the warrant, and they eventually seized evidence that had not been in their plain view. In addition, the government offered no evidence to refute the testimony of these witnesses. Several hours after Maxwell's arrest, the agents even took a newly-arriving person inside the shop, interrogated her, and released her an hour later. The scope and duration of the search went well beyond what was necessary to preserve the status quo.

### 7. *Conclusion.*

The evidence obtained from the searches will be suppressed.