908 P.2d 52

**STATE of Arizona, Appellee,**

v.

**Juan Jose PECINA, Appellant.**

**No. 1 CA–CR 94–0631.**

Court of Appeals of Arizona,
Division 1, Department D.

Dec. 5, 1995.

wire communications in drug-related transactions. For the following reasons, we affirm.

## FACTUAL [1] AND PROCEDURAL BACKGROUND

■ On March 19, 1993, sheriff's deputies in Riverside County, California, discovered a quantity of methamphetamine while searching the car of Ruben "Wolfy" Galvan incident to Galvan's arrest. Galvan told the deputies that he wanted to avoid impending criminal charges by revealing and helping to build a case against his drug supplier. The deputies contacted Detective Joe Escorza of the La Paz County, Arizona, Sheriff's Department, asking him to come to Blythe, California, where Galvan was being held. When Escorza and his partner arrived in Blythe, they participated in the interview of Galvan. Galvan told the officers that the defendant was his drug supplier and he agreed to act as a police informant.

Following Escorza's direction, Galvan had numerous, recorded telephone conversations with the defendant during which the defendant agreed to supply Galvan with methamphetamine. On one occasion, the defendant directed Galvan to a particular trash can where Galvan found an ounce of methamphetamine inside a paper cup. On another occasion, the defendant accompanied Galvan to the residence of a mutual acquaintance where the defendant sold Galvan approximately two ounces of methamphetamine. When police searched the residence, they recovered approximately two pounds of marijuana in addition to the methamphetamine. The marijuana was packaged in two plastic bags, one of which bore the defendant's fingerprint.

The defendant was indicted on two counts of selling dangerous drugs under Ariz.Rev. Stat.Ann. ("A.R.S.") section 13–3407(A)(7), one count of possession of marijuana under section 13–3405(A)(1), and twelve counts of using wire communications to sell dangerous drugs under section 13–3417, three of which counts were dismissed before trial. Pursuant to section 13–604(H) and *State v. Han-*

Grant Woods, The Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Joseph Maziarz, Assistant Attorney General, Jason Maxwell, certified student, Rule 38(E), Rules of the Arizona Supreme Court, Phoenix, for Appellee.

R. Glenn Buckelew, Parker, Gary Hill, pro hac vice, El Paso, Texas, for Appellant.

## OPINION

EHRLICH, Judge.

Juan Jose Pecina ("defendant") appeals his convictions and sentences for selling dangerous drugs, possession of marijuana and using

---

1. We view the facts in the light most favorable to sustaining the verdicts, resolving all reasonable inferences against the defendant. *State v. At-* *wood,* 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992), *cert. denied,* 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

*nah,* 126 Ariz. 575, 617 P.2d 527 (1980), the state charged all counts as prior convictions to each other.

Galvan was not available to testify at the hearing on the defendant's motion to suppress. However, Escorza testified and the trial court concluded that Galvan voluntarily had consented to the wiretaps.

At the defendant's jury trial, Galvan testified that police had coerced him into cooperating and allowing the tape-recording of his conversations with the defendant through the use of violence, threats and intimidation. He added that the defendant did not supply him with any drugs. Police witnesses responded that they did not use physical force, threats or coercion of any kind, that Galvan cooperated voluntarily and that they recovered the drugs which the defendant had sold to Galvan.

The jury convicted the defendant on all charges but two of the wire-communications counts. The trial court sentenced him to mitigated 5.25– and 8–year prison terms on the drug-sale convictions and a presumptive 3.75–year term on the marijuana possession conviction, each to be served consecutively to the others. The defendant also received mitigated 8–year terms on the wire-communications counts to be served concurrently with each other and the prison terms on the drug-sale counts. He timely appealed, raising these issues:

1. Whether the trial court was within its discretion in finding that Galvan voluntarily consented to the wiretaps; and

2. Whether the state proved that the substances seized by the police fell within the statutory definition of "dangerous drugs."

## DISCUSSION

### A. Voluntariness of Galvan's Consent to the Wiretaps

The defendant assigns error to the trial court's decision to admit evidence of the recorded telephone conversations. Specifically, he contends that there was insufficient support for the finding that Galvan voluntarily consented to the wiretaps, claiming that the police forced Galvan to cooperate in the in-

vestigation and agree to record telephone conversations with the defendant.

■ Arizona case law in this area is undeveloped but there is guidance in federal cases interpreting the parallel federal wiretap statute, 18 U.S.C. §§ 2510–22. These cases yield several principles, a primary one being that an appellate court should not disturb a trial court's decision to admit the wiretap evidence unless the decision is clearly erroneous. *United States v. Tangeman,* 30 F.3d 950, 952 (8th Cir.1994); *United States v. Gomez,* 947 F.2d 737, 738 (5th Cir. 1991), *cert. denied,* 503 U.S. 947, 112 S.Ct. 1504, 117 L.Ed.2d 642 (1992); *United States v. Antoon,* 933 F.2d 200, 204 (3d Cir.), *cert. denied,* 502 U.S. 907, 112 S.Ct. 300, 116 L.Ed.2d 243 (1991). In reviewing the decision, we examine the totality of the circumstances and afford great deference to the trial court's resolution. *Antoon,* 933 F.2d at 204. In this case, the court's determination that Galvan voluntarily consented to the recordings will stand "'unless it (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.'" *Id.* (quoting *Krasnov v. Dinan,* 465 F.2d 1298, 1302 (3d Cir.1972)).

■ Both the federal and Arizona statutes permit evidence of a telephone wiretap made by the police to be admitted when one or more of the parties to the conversation has agreed to the wiretap. 18 U.S.C. § 2511(2)(c); *United States v. White,* 401 U.S. 745, 751, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453 (1971); A.R.S. § 13–3012(7). The state bears the burden of proving that any consent to the tape recording was voluntary. *United States v. Wake,* 948 F.2d 1422, 1426 (5th Cir.1991), *cert. denied,* 504 U.S. 975, 112 S.Ct. 2944, 119 L.Ed.2d 569 (1992). Typically, the placement of a call or communication by the informant with knowledge that it will be recorded is sufficient to establish consent. *E.g., United States v. Kolodziej,* 706 F.2d 590, 593 (5th Cir.1983). However, when there is an allegation of coercion, the state must show that there was no undue pressure, threat or improper inducement involved. *Id.*

■ The record in this case reveals nothing to undermine the trial court's judgment regarding voluntariness. The evidence demonstrates that Galvan was fully aware that his telephone conversations with the defendant were being recorded. The court explored this very question at the suppression hearing and concluded that Galvan had freely consented to the wiretaps. When Galvan testified at trial, claiming that the police had used physical violence and threats to coerce his agreement to be taped, he was contradicted by five police witnesses who recounted that his agreement was voluntary and not the result of coercion. Further, the defendant requested and received an instruction that the consensual nature of Galvan's participation was a fact question for the jury. Using an instruction similar to RAJI standard criminal # 6 (voluntariness of statements), the court instructed the jury that it could consider the evidence of the tape-recorded telephone conversations only if it found that Galvan voluntarily agreed to be taped.

■ The defendant wholly ignores this evidence. Significantly, he overlooks the testimony of the police witnesses as to the voluntary nature of Galvan's cooperation and the absence of any threats or violence to induce consent, which testimony, standing alone, provided ample evidentiary support for the trial court's conclusion that Galvan's agreement was voluntary. *See Wake,* 948 F.2d at 1427. The defendant also fails to acknowledge that he received an instruction requiring the jury to independently determine whether Galvan's consent was freely-given.[2] Thus, the court and the jury considered this question, and each concluded that Galvan's consent to the wiretap was voluntary. We conclude that the court properly admitted the tape-recordings.

## B. Methamphetamine as a "Dangerous Drug"

■ Methamphetamine is classified as a "dangerous drug" under A.R.S. section 13–3401(6)(b)(xii), which provides:

6. "Dangerous drug" means the following by whatever official, common, usual, chemical or trade name designated:

\* \* \* \* \* \*

(b) Any material, compound, mixture, or preparation which contains any quantity of the following substances ... having a potential for abuse associated with a stimulant effect on the central nervous system:

\* \* \* \* \* \*

(xii) Methamphetamine

Transfer or sale of a dangerous drug is a class 2 felony. *See* A.R.S. §§ 13–3407(A)(7), (B)(7).

Two of the counts in the indictment charged the defendant with violations of section 13–3407(A)(7). The testimony established that he sold a white, powdery substance to Galvan on two occasions consistent with the time frames set forth in the indictment and a criminalist testified that the substance contained useable amounts of methamphetamine.

The defendant argues that there was insufficient evidence to support his conviction based on his interpretation of section 13–3401(6)(b), which he believes requires the state to prove (1) that the substance was methamphetamine and (2) that the substance has "a potential for abuse associated with a stimulant effect on the central nervous system." He claims that the lack of evidence on the latter point constitutes a failure of proof. We disagree.

The defendant's argument is indistinguishable from the argument offered by the appel-

2. While the same attorney represented the defendant at trial and on appeal, counsel's position on who should decide the issue of voluntariness has shifted without account. At trial, defense counsel argued that this was a question of fact for the jury. However, on appeal, he asserts that voluntariness is a question for the trial court to decide.

For its part, the state maintains on appeal that Galvan's voluntariness was a matter strictly for the trial court to decide. It argues that the

defendant got "a second chance" by virtue of the jury instruction on this issue.

The state is correct in its position that the admissibility of the wiretap evidence turns on a preliminary finding of fact by the trial court. *See, e.g., Gomez,* 947 F.2d at 738. That said, we agree with the federal authority that a defendant is entitled to a jury instruction when there is some evidence that a person's consent to record the conversation was coerced. *Id.*

lant and rejected by this court in *State v. Light*, 175 Ariz. 62, 852 P.2d 1246 (App.1993). We held that the statute incorporated the legislature's determination that methamphetamine (and the other 23 substances enumerated in the subsection) "has a potential for abuse associated with a stimulant effect on the central nervous system." *Id.* at 63, 852 P.2d at 1247. The defendant nonetheless urges this court to distinguish *Light* on the basis of the testimony of the criminalist in this case that he did not determine whether the seized substance contained "D–" or "L–" type isomers, either of which is found in the methamphetamine family of drugs but one of which, L, is found in certain lawful over-the-counter medications. The defendant's argument turns on his assertion that the statutory clause "having a potential for abuse associated with a stimulant effect on the central nervous system" modifies "isomers" rather than "substances."

The defendant's attempt to distinguish *Light* ignores the crux of that decision that the express enumeration of methamphetamine among the prohibited substances reflects a finding by the legislature that the substance methamphetamine, regardless of its specific isomer components, is a dangerous drug. In short, it is irrelevant whether the methamphetamine compound or its constituent elements has the potential for abuse and equally irrelevant whether the phrase "potential for abuse" modifies "isomers" or "substances." Consequently, it is unnecessary for the state to prove whether the methamphetamine contains the "D–" or "L–" type of isomer. The reasoning in *Light* is dispositive.

### CONCLUSION

Having considered the issues raised by the defendant, and having further reviewed the record for fundamental error and found none, we affirm the convictions and sentences.

LANKFORD, Acting P.J., and SULT, J., concurs.