COMMONWEALTH *vs.* CHARLES E. WHITE.

Middlesex.　　May 9, 1977. — June 8, 1977.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Search and Seizure. Evidence,* Firearm, Order of evidence. *Firearms. Motor Vehicle,* Firearms.

At a criminal trial, the judge did not err in denying the defendant's motion to suppress a gun which was observed in plain view by a police officer in the trunk of the defendant's automobile when the defendant voluntarily unlocked and opened the trunk in his search for the vehicle's registration certificate. [400-401]

At the trial of complaints charging the defendant with receiving stolen property (a firearm) and unlawfully carrying a firearm in a motor vehicle, there was no error in the admission of the firearm in evidence where it appeared that the firearm had not been seized illegally, that, after the firearm was admitted, testimony was introduced to establish that the firearm was operable, and that there was proper authentication of the firearm. [401-402]

At the trial of a complaint charging the defendant under G. L. c. 269, § 10(*a*), with unlawfully having a firearm under his control in a motor vehicle, there was no error in the judge's refusal to charge the jury that "under his control in a motor vehicle means [that] it [a firearm] has to be accessible in the motor vehicle." [402]

COMPLAINTS received and sworn to in the Second District Court of Eastern Middlesex on July 1, 1975.

In the Superior Court the cases were tried before *Leen, J.*

*Eric A. Nissen (Joseph Sax* with him) for the defendant.

*Peter W. Agnes, Jr.,* Assistant District Attorney, for the Commonwealth.

HALE, C.J.   After a jury trial subject to G. L. c. 278, §§ 33A-33G, the defendant was convicted on separate complaints charging the receiving of stolen property (a firearm) and unlawfully carrying a firearm in a motor vehicle and was sentenced.[1] After a brief summary of the pertinent evidence we shall discuss those assignments of error which have been argued.

On July 1, 1975, at approximately 2:40 A.M. the defendant, accompanied by three other persons, was proceeding in a motor vehicle along Arsenal Street in Watertown. The vehicle was owned by the defendant and was being driven by his brother, Alvin. At that time Officers Seminara and Murphy of the Watertown police department were on patrol on Arsenal Street in a police cruiser. The defendant's vehicle passed the cruiser, which was heading in the same direction. After the defendant's vehicle had passed, the officers observed that the vehicle's rear number plate was not lighted. Thereupon the officers signalled for the defendant's vehicle to stop, which it did.

Both officers got out of the cruiser. Seminara walked up to the driver's door while Murphy stood at the right rear of the defendant's car. Seminara requested the operator to produce his driver's license and the vehicle's registration certificate. The driver presented his license but was unable to locate the registration, either in the glove compartment or over the sun visor. At this point the defendant suggested that the registration might be in the trunk

---

[1] Complaint No. 75-4193 charged the defendant, pursuant to G. L. c. 266, § 60, with receiving stolen property (a Browning automatic hand gun, 9 millimeter, .45 calibre frame, serial no. 69-C-5591), and complaint no. 75-4194 charged the defendant under G. L. c. 269, § 10(*a*), with having a firearm under his control in a motor vehicle without permission.

of the car and said, "I will get out and look." He took the keys out of the ignition, alighted from the car, and walked to its trunk. Seminara did not order the defendant from the car, nor did he direct him to open the trunk. The defendant opened the trunk, and on its floor was an attaché case. Seminara shined a flashlight into the trunk as he stood behind the defendant. The defendant released the latches of the case, raised the lid about six to eight inches and then reached into it. As the defendant was opening the case, Seminara spotted an ammunition clip and the butt of a pistol. Immediately Seminara drew his service revolver, forced the defendant to stand against a wall, and shouted the word "gun" to his partner, Murphy. Murphy ordered the occupants out of the car. The firearm was tightly wrapped in a brown paper bag, but its butt protruded from the open end of the bag. The defendant told Seminara that he (the defendant) did not have a permit for the gun. The defendant and the other occupants of the car were arrested and taken to the police station.

Before trial the defendant moved to suppress the items which had been taken by the police from the attaché case in the trunk. That motion was denied.

1. The defendant assigns as error the denial of his motion to suppress, arguing that the firearm was obtained as the result of an illegal search and seizure. After a hearing the judge found and ruled as follows: "I rule that the motion to suppress must be denied. It appears to the Court that there was no search and seizure here. The defendant voluntarily went to the trunk of his car and having unlocked and opened it, proceeded to open the attaché case in search of his certificate of registration for the motor vehicle. The ammunition clip and the butt of the [pistol] came into the view of the police officer at that point. Whether one were to term this a search with consent or a voluntary disclosure by the defendant of the articles seized would seem to be of no consequence. The officer did nothing other than request to see the registration to the car, and what followed was the result of the defendant's voluntary action. . . . It was the defendant who suggested

that the registration might be in the trunk and voluntarily went to it. Officer Seminara neither suggested nor directed this action. Once the trunk and the attache case within were opened, the officer had the objects in view and thereafter had the right to do the things he did. . . . I find and rule that Officer Seminara had the right to arrest the defendant and seize the articles which are the subject of the motion to suppress." We agree with the motion judge that there was no search.

When Officer Seminara observed the ammunition clip and the butt of the gun protruding from the paper bag, he had the right to seize them. "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Harris* v. *United States*, 390 U. S. 234, 236 (1968). *Commonwealth* v. *Fields*, 2 Mass. App. Ct. 679, 681-682 (1974). The motion judge did not err in denying the defendant's motion to suppress.

2. The defendant's second assignment of error basically claims error in the admission of the firearm in evidence. Without deciding whether all the reasons enumerated by the defendant as bases for his exceptions are properly before us, we deal with each below. (a) The defendant's first contention that the firearm was obtained illegally has already been answered in part 1 of this opinion. (b) The defendant argues that the Commonwealth failed to establish a proper foundation upon which the weapon could be admitted as being an "operable" firearm. While it is true that at the time the firearm was admitted in evidence there had not been any expert testimony presented to establish whether the firearm was operable, Officer Seminara later testified that he had successfully test fired that weapon by using the cartridges in the ammunition clip that had also been seized from the trunk of the defendant's vehicle. It was within the sound discretion of the trial judge to allow the evidence to be introduced in this order. *Commonwealth* v. *Eppich*, 342 Mass. 487, 494-495 (1961). Furthermore, the firearm was admissible as it was

relevant to the charge of receiving stolen property. (c) Next, the defendant maintains that the chain of custody of the firearm was not established. However, as Officer Seminara provided the proper authentication when he testified that the firearm offered in evidence was the same one that he had removed from the paper bag that was in the attaché case, it was unnecessary for him to have had possession of the weapon from the time of arrest to the time of its presentation at trial. See *Commonwealth* v. *Mercier*, 257 Mass. 353, 365-366 (1926); *Commonwealth* v. *Maloney*, 348 Mass. 610, 614-615 (1965). (d) As we have already indicated in part 2(b) that there was testimony that the firearm was operable, we cannot perceive that it was prejudicial for the witnesses to refer to it as a "gun," "pistol," or "weapon."

3. The defendant's last assignment of error is based on two exceptions taken to the judge's charge. Both exceptions related to that portion of the charge which explained what elements must be found to constitute "control" of a firearm in a motor vehicle under G. L. c. 269, § 10(a). The defendant attempts to expand the effect of his exceptions to cover numerous claimed errors unrelated to those exceptions. We deal only with the rulings to which those exceptions were noted. *Commonwealth* v. *Dupont*, 2 Mass. App. Ct. 566, 571 (1974). The defendant excepted to the judge's refusal to charge the jury that "under his control in a motor vehicle means [that] it [a firearm] has to be accessible in the motor vehicle," citing *Commonwealth* v. *Boone*, 356 Mass. 85 (1969), in support of that proposition. However, the holding of *Boone* was that one must have knowledge of the presence of a weapon in order to be guilty of having control of a firearm in a motor vehicle under what is now G. L. c. 269, § 10(a). We have read the judge's instructions on the question of control and conclude that they were not erroneous.

*Judgments affirmed.*