STATE of Iowa, Appellee,

v.

Timothy Alan ERICKSON, Appellant.

No. 84–296.

Supreme Court of Iowa.

Feb. 13, 1985.

Charles H. Harrington, Appellate Defender, and John P. Messina, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Steven K. Hansen, Asst. Atty. Gen., and Dorothy M. Maher, Asst. County Atty., for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McCORMICK, CARTER, and WOLLE, JJ.

McCORMICK, Justice.

In this appeal we must decide whether a truck driver who lives in the cab of his semi-truck is free to keep a revolver in the truck. Defendant Timothy Alan Erickson was convicted by jury and sentenced for carrying a revolver in his semi-truck in violation of Iowa Code section 724.4 (1983). He contends the trial court erred in overruling his motion to suppress the weapon, in refusing to instruct on or acquit him based on two defenses to the charge, and in violating several legal restrictions in sentencing him. We find no merit in his contentions and therefore affirm the trial court.

During the late evening of August 7, 1983, a Johnson County deputy sheriff was dispatched to the scene of reported reckless driving by two semi-trucks on Interstate 80. He found two trucks parked, one behind the other, on the shoulder off the exit ramp near Oxford. Defendant was asleep in the driver's seat of one of the trucks. The officer awakened him and asked him to get out of the truck. When defendant did so, the officer noted that he was unsteady on his feet, his speech was slurred, and he smelled of alcoholic beverages. The officer believed defendant was intoxicated, had observed a cooler on the floor of the truck cab, and wished to search the truck for beverages. He asked defendant's consent to search the cab, and defendant gave him permission to do so.

Another deputy sheriff and a state trooper were called to the scene. The officers became occupied with investigating the driver of the other truck and did not immediately search defendant's truck. Defendant then said he did not want his truck searched by the deputy to whom he had given permission. When asked by the other deputy if that meant he withdrew his consent for the search, he said that officer could conduct the search. As that officer opened the cab door, defendant said, "You might as well know there is a gun in there." The officer found a revolver in the sleeping area of the cab, and that incident is the basis of the present charge.

I. *The search issue.* Defendant contends the court erred in overruling his motion to suppress the revolver as the product of an unlawful search. Among other grounds, the State sought to uphold the search on the ground of consent. Defendant alleges that he was too intoxicated for his consent to be voluntary.

■ It is well established that a search "without warrant and without probable cause, but with proper consent voluntarily given, is valid under the fourth amendment." *State v. Bakker,* 262 N.W.2d 538, 546 (Iowa 1978). The burden is on the State to establish the voluntariness of the consent by a preponderance of the evidence. *State v. Folkens,* 281 N.W.2d 1, 3 (Iowa 1979).

■ At one time this court said that intoxication was an affirmative defense on the voluntariness issue upon which the defendant bore the burden of proof. *See State v. Baych,* 169 N.W.2d 578, 583 (Iowa 1969). Subsequently, the court held that the defendant bears the burden of production of evidence but not the burden of persuasion on an intoxication defense. *See State v. Templeton,* 258 N.W.2d 380, 383 (Iowa 1977). Thus, to the extent that the *Baych* case imposed the burden of persuasion on the defendant, it is overruled. Our recent cases have recognized that the burden of persuasion on the consent issue remains with the State. *See State v. Hatter,* 342 N.W.2d 851, 854 (Iowa 1983); *State v. Hall,* 297 N.W.2d 80, 89 (Iowa 1980), *cert. denied,* 450 U.S. 927, 101 S.Ct. 1384, 67 L.Ed.2d 359 (1981); *State v. Ege,* 274 N.W.2d 350, 353 (Iowa 1979).

■ We find that the State met its burden to prove voluntary consent in the present case. Although the evidence establishes defendant was intoxicated, his faculties were not so impaired as to disable him from consenting to the search. The record sufficiently shows his consent was the product of a rational intellect and free will. Therefore the trial court did not err in overruling defendant's motion to suppress.

■ II. *The defenses.* By requested instructions and a motion for acquittal defendant asserted two defenses to the weapons charge. Both were based on exceptions provided in section 724.4. In relevant part, the statute provides:

A person who goes armed with a dangerous weapon concealed on or about his or her person, ... or who knowingly carries or transports in a vehicle a pistol or revolver, commits an aggravated misdemeanor, provided that this section shall not apply to any of the following:

1. A person who goes armed with a dangerous weapon in his or her dwelling or place of business, or on land owned or possessed by the person.

.    .    .    .    .

6. Any person who for any lawful purpose carries or transports an unloaded pistol or revolver in any vehicle inside a closed and fastened container or securely wrapped package which is too large to be concealed on the person or inside a cargo or luggage compartment where the pistol or revolver will not be readily accessible to any person riding in the vehicle or common carrier.

Defendant asserted that his truck was his "dwelling" and "place of business" within the meaning of section 724.4(1). Because the revolver was lying on the bunk in the truck cab, he did not rely on subsection six. The statutory exceptions are affirmative defenses. *See State v. Bowdry,* 337 N.W.2d 216, 218 (Iowa 1983).

A. *The dwelling issue.* Defendant introduced evidence that he spent 95 percent of his time in his truck, transporting goods between Chicago and Minnesota and on the west coast. He owned the truck and slept in it most of the time. He had moved out of his parents' Minnesota home in 1981, although he still received mail there. When not driving the truck, he stayed with a girl friend in Minneapolis.

A curtain divided the bunk from the driving compartment of the truck cab. Defendant kept his clothes, a cooler, toiletries, stereo, TV, tools, and bedding in the truck. He carried a lawn chair strapped to the back of the cab.

In contending the truck was his dwelling, defendant relied on the definition in section 702.10:

A "dwelling" is any building or structure, permanent or temporary, or any land, water or air vehicle, adapted for overnight accommodation of persons, and actually in use by some person or persons as permanent or temporary sleeping quarters, whether such person is present or not.

Section 702.1 makes this definition applicable to the term in section 724.4(1).

The definition is explained in 4 J. Yeager & R. Carlson, *Iowa Practice: Criminal Law and Procedure,* section 37 at 13–14 (1979):

The dwelling is given special treatment in the criminal law as being a person's place of refuge from the dangers of everyday life at a time when he is the most vulnerable, that is, the place where he goes to relax and to sleep. Former law employed the term "dwelling house" ... a term which was more restrictive than "dwelling" ... in that it would only apply to a building of some kind which is used as a dwelling. § 702.10 concentrates on the actual use of the dwelling as sleeping quarters, although it need not be occupied on a permanent basis. It places such temporary habitations as tents, house trailers and campers, and some kinds of boats in the same category with houses and cabins, with the requirement in each case being that the place be adapted for overnight accommodation of persons. The words "actually in use" means "actually or constructively occu-

pied" as is shown by the final clause. Where the occupancy is permanent, no problem should arise in applying this definition, but where the occupancy is temporary, as in the case of a camping trailer which is kept ready for use but actually used only on weekends, a question might arise as to whether it is constructively occupied during the week. Reference to the reason for establishing this classification suggests that it should be considered a dwelling only on weekends when in use as such.

These authors also explain that the dwelling exception in the weapons statute "is consistent with the idea that the possession of weapons is justified by their use as instruments of defense." *Id.,* § 519 at 131.

In resisting defendant's argument, the State contends the dwelling exception is applicable only to a charge of "going armed" with a revolver and not to a charge as in this case of "carrying or transporting" the revolver. Alternatively, the State contends that defendant's semi-truck was not a dwelling within the meaning of the statute.

The State's first contention is based on the alternative offenses provided for in section 724.4. One offense is committed when a person "goes armed" in certain circumstances. Another is committed when a person "carries or transports in a vehicle a pistol or revolver...." The dwelling exception in section 724.4(1) is expressly available to a person who "goes armed." In contrast, the exception in section 724.4(6) is expressly available to a person who "carries or transports ... in any vehicle...." According to the State, defendant cannot rely on a defense to a charge of going armed in a case where he is charged only with carrying and transporting the weapon. We reject this contention.

■ The distinction between the charges lies in the requirement for a "going armed" charge that the weapon be in a place where it is readily accessible to the person. *See State v. Alexander,* 322 N.W.2d 71, 72 (Iowa 1982). If the weapon is in a vehicle which qualifies as a dwelling

under the dwelling exception, the defense thus obviously is available when the weapon is readily accessible to the person. It would be strange if the defense were not also available when the weapon is not readily accessible. We believe the explanation lies in the nature of the dwelling exception. When the defense applies, it is because the vehicle has become a dwelling for purposes of the statute. In that event the defense is available without regard to where in the dwelling the weapon is kept. Hence it is available whenever a vehicle comes within the definition of "dwelling." We therefore turn to the State's alternative contention.

It is obvious that the General Assembly intended to draw some kind of line between dwelling and vehicle. In ascertaining where that line exists, we must look to the object to be accomplished, the evils and mischief sought to be remedied, or the purpose to be served, and place a reasonable construction on the statute. *State v. Newman,* 313 N.W.2d 484, 486 (Iowa 1981). The rule of strict construction comes into play in doubtful cases. *Id.*

■ We will assume that defendant's tractor cab was "adapted for overnight accommodation of persons" within the meaning of section 702.10. The issue remains whether it was "actually in use by some person or persons as permanent or temporary sleeping quarters" on the occasion involved. We do not believe that the legislature contemplated that a vehicle is a vehicle while being driven on a roadway but becomes a dwelling when the driver pulls off the road and goes to sleep. It is reasonable to believe that a more substantial departure from normal use of the vehicle as a vehicle is required. The dwelling exception reaches habitations like house trailers, campers, and motor homes when they are being used in circumstances analogous to those in which a dwelling is used. The statutory change broadened the character of the place embraced in the definition but not the character of the interest to be protected. Thus we do not believe the dwelling exception is applicable when the principal reason for the person's occupancy of

the vehicle is its use as a mode of transportation.

A vehicle that is adapted for the overnight accommodation of persons has two main potential functions: to serve as a means of transportation or to serve as sleeping quarters. As long as the vehicle is in transit, its principal function is to serve as a means of transportation, and it is not a place of residence. *See People v. Foley*, 149 Cal.App.3d Supp. 33, 40–41, 197 Cal.Rptr. 533, 538 (Cal.App.Dep't.Super.Ct. 1983). We find that the truck was not transformed from a vehicle into a dwelling when defendant drove onto the shoulder of the exit ramp to take a nap. Therefore the trial court did not err in refusing to instruct or acquit on the basis of the dwelling defense. *See State v. Kaelin*, 362 N.W.2d 528 (Iowa 1985), filed separately this date.

B. *The place of business issue.* Defendant separately asserts his truck was his place of business within the meaning of section 724.4(1). That term is not defined in the criminal code and we have no cases determining whether or in what circumstances a vehicle might be a place of business. We do not believe the General Assembly intended that a vehicle ever be a place of business within the meaning of the statute. A vehicle can be considered a dwelling in some circumstances because of the unusual statutory definition of that term. No similar statutory definition of place of business is provided.

We agree with the analysis of the Texas court in *Baird v. State*, 38 Tex. 599, 601–02 (1873) (*quoted with approval in Roy v. State*, 552 S.W.2d 827, 829–30 (Tex.Crim. App.1977)):

> The place of business contemplated by the law ... has reference to a particular locality, appropriated exclusively to a local business, such as the farm, the store, the shop, or dwelling place, and the business ... as is usually carried on upon the farm, in the store or shop, or other appropriated local place.... [T]he public roads, can in no proper sense be termed any man's place of business, since he has no right to an exclusive appropriation....
>
> [If "premises" could include a moving vehicle controlled by a person in "his regular course of business," every person could then argue justification for bearing arms] ... for he could always claim to be at his own business ...; and even he who makes it a business to appropriate other people's property to his own use might claim the right to bear arms to protect that business....

The court added in *Roy:* "Moreover, to adopt appellant's position would permit any route operator of a service business or any truck driver to lawfully possess a weapon ... while in a vehicle on the public thoroughfares." 552 S.W.2d at 830. This reasoning is supported by the existence of a statutory provision for issuance of a weapons permit to a person whose employment "transporting property of a value requiring security ... reasonably justifies that person going armed." *See* § 724.6. If a vehicle has a business use in which the driver needs the protection of a weapon, the solution is to seek a permit.

We conclude that the trial court did not err in refusing to instruct or acquit on defendant's place of business defense.

III. *The sentencing.* Defendant was sentenced to 90 days in jail, with all but two days suspended. He was placed on probation for two years. He contends the trial court erroneously considered an unprosecuted charge in sentencing him, gave him a longer sentence than authorized by law, and unlawfully split the sentence between incarceration and probation.

The trial court acknowledged that it took into consideration the fact that a quantity of marijuana was found in the cab of defendant's truck. We believe this issue is controlled by *State v. Swartz*, 278 N.W.2d 22, 26 (Iowa 1979). Although defendant did not admit he possessed the marijuana, we find that the record establishes his possession of the substance. Therefore the court was entitled to consider it in sentencing him. The sentence cannot be upset on that ground.

534

A violation of section 724.4 is an aggravated misdemeanor. Defendant could have been imprisoned for a period not to exceed two years. This includes the possibility of a determinate sentence of not more than one year. *See* Iowa Code § 903.1(2) (1983 Supp.). Defendant was sentenced only to confinement of 90 days with all but two days of that sentence suspended. His probation was to run for two years, and that period of probation is authorized by section 907.7. Thus defendant's sentence did not exceed the relevant statutory limits.

In attacking his split sentence defendant relies on *State v. Tensley*, 334 N.W.2d 764, 764–65 (Iowa 1983), which holds that section 907.3(2) does not authorize commitment to a county jail as a condition of probation. In this case, however, defendant was not sentenced to county jail as a condition of probation but pursuant to the court's sentencing authority in sections 903.1(2), 903.4, and 356.47. Under those provisions the court may sentence the defendant to county jail and suspend part of the sentence and place the defendant on probation. The situation is thus not controlled by section 907.3(2) as interpreted in *Tensley*.

We find no merit in defendant's attack on his sentence.

AFFIRMED.