STATE of Iowa, Appellee,

v.

Richard Lamont HOLLAND, Appellant.

No. 85–1070.

Supreme Court of Iowa.

June 18, 1986.

Randy J. Hohenadel of Wells, McNally & Bowman, Davenport, for appellant.

Thomas J. Miller, Atty. Gen., Ann DiDonato, Asst. Atty. Gen., Gary L. Sissel, Asst. Co. Atty., for appellee.

McGIVERIN, Justice.

This is an appeal in a criminal action from a judgment entered on a jury verdict finding defendant Richard Holland guilty of two counts of burglary in the second degree. Iowa Code §§ 713.1 and 713.5 (1983). Upon consideration of the issues raised, we affirm.

On November 1, 1984, defendant Holland was arrested at the residence of his girlfriend, Donna Lam, pursuant to search and arrest warrants for him. The validity of these warrants is uncontested. Defendant was charged in connection with two separate burglaries which occurred in late October 1984. In one of these burglaries involving the Susan Murphy and Stacey Semenczuk apartment, a number of pieces of jewelry were stolen. In the other one, which occurred at the Darrell DeWitt residence, a Technics stereo cassette recorder, a small caliber revolver and other pieces of jewelry were taken.

Officers arrived at Donna Lam's apartment where defendant was believed to be staying. The apartment consisted of two stories and a basement. The officers knocked at the door, and a male voice answered. They then identified themselves as police officers, and a few moments later Donna Lam opened the door. When asked about Holland's location, Lam denied that he was on the premises. Three children, two of Lam's and one she was babysitting, were playing in the basement of the apartment, and Lam informed officers that her baby was sleeping upstairs.

After Lam's repeated denials that defendant was at the residence, she was placed under arrest for interference with official acts, Iowa Code section 719.1, and was taken out of the apartment to a police car. She was informed by the arresting officers that the Department of Human Services would be called to take charge of the children left in the apartment.

Soon after Lam's arrest, defendant came downstairs and surrendered to police. He then was placed under arrest. The officers heard noises coming from the second story of the apartment, so two of them made a brief check of the rest of the residence, which lasted approximately one minute, for security purposes. During this cursory search, a baby was found upstairs in a crib. No other persons were found upstairs. However, in the master bedroom, an officer saw in plain view a Technics cassette stereo recorder, like the one taken in the DeWitt burglary, which he reported to the officer in charge.

Thereafter, Lam was returned to the residence and "unarrested". Then, a request was made to search the premises. Lam signed a written consent to search which was explained to her by one of the officers. She also read the consent form before signing it. The officers then searched the premises. The serial number on the Tech-

nics stereo recorder matched the one taken in the DeWitt burglary. Jewelry taken during the two previous burglaries also was recovered during this second search.

After a trial information was filed and defendant was arraigned, he filed a motion to suppress the evidence found in Lam's apartment. The motion was denied by the district court after an evidentiary hearing.

The State listed Darrell DeWitt, the victim of one of the burglaries, as a witness in the minutes of testimony filed in the case. DeWitt had made plans to take a rescheduled pleasure trip to California during the time of defendant's trial. Apparently annoyed over a continuance granted in the case, DeWitt indicated to the prosecutor that he would not come back for the trial. The prosecutor, therefore, decided not to subpoena him, but to take a videotaped deposition instead during the week prior to the time trial actually occurred.

Both parties were aware of the purpose for taking the deposition. Defendant and his counsel attended the deposition but objected on the ground that the witness was not unavailable for trial. Cross-examination was permitted, and a thorough cross-examination was conducted. The main purpose of DeWitt's testimony was to identify two pieces of property, the stereo recorder and a tie-tack, which were seized at Lam's apartment at the time of defendant's arrest, as being owned by DeWitt.

At trial defendant moved to exclude the deposition on the grounds that DeWitt was not unavailable for trial under Iowa Rule of Evidence 804(a)(5), and, thus, his former testimony was hearsay. Iowa R. Evid. 804(b)(1). The motion was overruled. The State thus offered DeWitt's testimony in the form of a videotaped deposition, which was viewed and heard by the jury at trial.

During defendant's trial, testimony of two of the arresting officers was admitted. They testified over defendant's relevancy objection that defendant offered to kill anyone of the officers' choosing in return for his release. Previously, a motion in limine, requested by defendant to exclude this evidence from admission at trial, had been overruled.

The jury found defendant guilty on both counts. The court then sentenced defendant to incarceration.

Defendant appealed, contending that the district court erred in admitting: 1) videotaped deposition testimony by the witness, Darrell DeWitt, in violation of the confrontation clause of the sixth amendment to the United States Constitution and the hearsay rule; 2) evidence seized in the two separate searches in violation of the fourth amendment to the United States Constitution; and 3) testimony by the police officers about certain statements made by defendant which defendant claims were irrelevant.

I. *Videotaped deposition evidence.* On appeal, defendant invoked the sixth amendment right to confrontation to challenge the use of the videotaped deposition testimony of prosecution witness Darrell DeWitt at his criminal trial. Defendant also claims that the videotaped deposition was hearsay and, thus, was inadmissible.

There is some question whether error was preserved on the sixth amendment claim because defendant did not make this specific contention in the trial court. We nevertheless consider the sixth amendment claim because it is arguably linked with the hearsay contention. *See* Iowa R.Evid. 804(b)(1) and 804(a)(5) (deposition testimony admissible if witness is "unavailable" for trial). Because a constitutional right is implicated, our review of the record is de novo. *State v. Dean*, 332 N.W.2d 336, 338 (Iowa 1983).

The sixth amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI; *see* Iowa Const. art. 1, § 10. The right of confrontation, which is secured for defendants in state as well as federal criminal proceedings, *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1067, 13 L.Ed.2d 923, 926 (1965), is primarily "to secure for the opponent the opportu-

nity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974). We have approved this interpretation of the primary purpose of the confrontation clause. *State v. Davis*, 269 N.W.2d 434, 438 (Iowa 1978). A secondary purpose of the confrontation clause is to allow the tribunal the opportunity to adequately observe the demeanor of the witness while testifying. *State v. Strable*, 313 N.W.2d 497, 500 (Iowa 1981).

▮ Defendant recognizes there is an exception which would permit the deposition testimony to be admitted without violating the confrontation clause requirement, when the witness is unavailable for trial. *State v. Kellogg*, 385 N.W.2d 558, 560 (Iowa 1986) ("A witness who has exercised fifth amendment privilege is 'unavailable' for purposes of the confrontation clause."); *State v. Castillo*, 315 N.W.2d 63, 65–67 (Iowa 1982) (deposition testimony used at trial satisfied confrontation clause requirements and was properly admitted when defendant "opened the door" by introducing excerpts of it or when witness was "unavailable" for trial). However, a witness is not unavailable for confrontation clause purposes "unless the prosecutorial authorities have made a good faith effort to obtain his presence at trial." *Barber v. Page*, 390 U.S. 719, 724–25, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255, 260 (1968). The Court added that "the possibility of refusal is not the equivalent of asking and receiving a rebuff." *Id.*, 88 S.Ct. at 1322, 20 L.Ed.2d at 260. The prosecution bears the burden of establishing this predicate for admissibility. *Ohio v. Roberts*, 448 U.S. 56, 74–75, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597, 613 (1980).

▮ Here, the State failed to meet its burden of establishing unavailability of the witness. The prosecutor should have subpoenaed the witness again for trial. The district court erred in allowing the videotaped deposition of DeWitt to be admitted into evidence. However, we conclude the error under this record was harmless beyond a reasonable doubt under the standard in *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 711 (1967). *See Strable*, 313 N.W.2d at 501 (error, if any occurred, was harmless when screen was placed at trial between alleged sex abuse victim and defendant while victim testified because purposes of confrontation clause were served).

This case is distinguishable from *Dean* where we held reversible error occurred when a discovery deposition of a witness was admitted into evidence at trial in lieu of his live testimony without a sufficient showing of witness unavailability. There, the deposition was taken for discovery purposes by a co-defendant and although defendant's counsel received notice, he did not attend. Thus, no cross-examination by defendant occurred. Further, a different medium was involved in *Dean*. There, only a written court reporter's transcript of the witness' testimony existed. In the present case, however, through this videotape, unlike the deposition in *Dean*, the jury was able to observe the demeanor of the witness. Therefore, our disposition in *Dean* is not controlling here.

▮ Both purposes of the confrontation clause, cross-examination and observation of the demeanor of the witness by the court and the trier of fact, were served here. Full cross-examination was conducted by defendant, and DeWitt's demeanor could be observed by the jury on the videotape. The use of television is so prevalent in our society that the jury is familiar with its technical characteristics. *See State v. Driker*, 204 N.J.Super. 558, 560–61, 499 A.2d 549, 551 (1984). Further, a videotaped deposition supplies an environment substantially comparable to a trial. *United States v. Benfield*, 593 F.2d 815, 821 (8th Cir.1979).

The Supreme Court recently stated that the correct inquiry in a case such as this is:

Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testi-

mony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. *Cf. Harrington* [*v. California* ], 395 U.S. [250], 254, [89 S.Ct. 1726, 1728, 23 L.Ed2d 284, 287 (1969) ]; *Schneble v. Florida*, 405 U.S. [427], 432 [, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340, 345 (1972) ].

*Delaware v. Van Arsdall*, 475 U.S. ——, ——, 106 S.Ct. 1431, 1437–39, 89 L.Ed.2d 674, 686–87 (1986).

Here, DeWitt only was presenting identification testimony for the prosecution as to property he owned; he was not their star witness. He did not witness the burglary or identify defendant as the culprit. Cross-examination was permitted during the deposition, and both sides were present at the testimony under oath. Finally, the overall strength of the prosecution's case was great. Defendant was identified by two other witnesses as one of the two persons seen near an apartment in question during the time frame within which one of the two burglaries occurred. Several pieces of jewelry identified by one of the victims of the burglaries were found in defendant's coat pocket at the time of his arrest. The two burglaries occurred on the same day, were in close proximity and the same method was used to enter both apartments. A tool that was consistent with pry marks on the doors of both apartments was found in the car of defendant's companion.

In addition to claiming a confrontation clause violation, defendant also contends that the admission of the videotaped deposition was hearsay because the witness was not unavailable for trial. Iowa R. Evid. 804(b)(1) and 804(a)(5). We believe in view of the above authorities that it was harmless error.

Nothing in the record indicates that the use of the videotaped deposition, rather than live testimony by the witness DeWitt, affected the result of defendant's trial. *Strable*, 313 N.W.2d at 501. Therefore, we conclude on the basis of the above authorities that no reversible error occurred here. *Van Arsdall*, 475 U.S. at ——, 106 S.Ct. at 1438, 89 L.Ed.2d at 686. We do not suggest that we would reach this conclusion in other factual contexts involving videotaped depositions. However, on these special facts, we find admission of the deposition harmless.

II. *Search and seizure.* Two searches by peace officers occurred at the residence of Donna Lam. First, there was the brief initial search made immediately after defendant was arrested. The second search took place after Donna Lam signed the consent form. Defendant contends that the first search was not justified on safety grounds and that the written consent to the second search was obtained by duress.

The State challenges the standing of defendant to raise this question because it claims Holland only stayed with Lam periodically and had no right of occupancy to the apartment. However, there was evidence defendant had been permitted use of the apartment by Lam. The trial court found defendant did have standing to assert the illegal search claims. We decide the case on the validity of the searches and seizures and, therefore, pass the standing issue. *State v. Koop*, 314 N.W.2d 384, 386 (Iowa 1982), *cert. denied*, 456 U.S. 979, 102 S.Ct. 2248, 72 L.Ed.2d 855.

A. *Cursory safety check.* Defendant argues that the district court erred in not suppressing the tape deck found during the search which occurred immediately after defendant's arrest. On the other hand, the State maintains that a protective security sweep, or cursory safety check was necessary in this case because the arresting officers knew that a gun had been stolen in the DeWitt burglary. Further, defendant had a partner, Donna Lam's brother, during the burglaries who was still at-large. All of the officers except one were wearing bulletproof vests at the time they arrived at Lam's apartment. Because the searching officer was lawfully upstairs when he observed the tape deck, the State argues that it was properly seized under the "plain

view doctrine" and was properly admitted into evidence. *See Coolidge v. New Hampshire,* 403 U.S. 443, 465–66, 91 S.Ct. 2022, 2037–38, 29 L.Ed.2d 564, 582–83 (1971).

In *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694 (1969), the Supreme Court articulated the now well-settled principle that while an arresting officer may search a suspect and the area within his or her immediate control, the officer may not routinely search other rooms absent some exception to the search warrant requirement. *See State v. Olsen,* 315 N.W.2d 1, 4 (Iowa 1982).

■ One of the "well-recognized exceptions" to the requirement of a search warrant is the so-called "cursory safety check exception." *United States v. Kolodziej,* 706 F.2d 590, 596 (5th Cir.1983). This exception is based on the practicalities of law enforcement which dictate that in certain emergency situations strict adherence to constitutional safeguards against intrusion into the home may be excused. The exception was stated as follows:

> Arresting officers have a right to conduct a quick and cursory check of the arrestee's lodging immediately subsequent to arrest—even if the arrest is near the door but outside the lodging—where they have reasonable grounds to believe that there are other persons present inside who might present a security risk.

*Id.* at 596 (citations omitted).

■ We agree with the State. Our review of the record convinces us that the district court correctly found the officers making the arrest were operating under the assumption their safety was in danger. Because the arresting officers believed there was a safety threat, there was an exigent circumstance excusing the requirement of a search warrant. The officer's presence in the upstairs bedroom was thus justified, rendering the plain view doctrine applicable.

B. *Consent search.* We next examine the propriety of the district court's conclusion that Donna Lam validly consented to the search of her home.

■ In order for a party's consent to be valid, it must be voluntary and uncoerced. *See State v. Erickson,* 362 N.W.2d 528, 530 (Iowa 1985). The burden of proving voluntariness is on the State. *Id.* When there is an allegation of coercion, the State, therefore, must show that there has been no undue pressure, threats or improper inducements.

After a pretrial suppression hearing, the district court concluded that the written consent was voluntary. Lam testified that the arresting officers did not threaten to take her children away if she did not cooperate; she merely was told where the children would be taken if she were arrested.

■ The facts of this case do not point to the type of undue pressure or coercion necessary to render the consent involuntary. Although Donna Lam may have felt anxious by the presence of the arresting officers in her home and by what might happen if she refused to cooperate, the officers' statements to her were not improper or in any way inaccurate. If she had been taken into custody, then some provisions obviously would have been necessary for the children. This situation was faced by the court in the *Kolodziej* case. There, the court stated that a consent to search was voluntarily given although the woman who consented was told that if she were arrested, her children would be placed with the welfare department. The court noted:

> Her decision [the mother's] to cooperate, made after several hours of sober reflection, was thus motivated by a desire to ameliorate the situation of her entire family. Such a desire does not vitiate the consent to cooperate.

706 F.2d at 595.

There is no evidence that Lam's cooperation was secured by threats of a physical nature or of prosecutorial action which had no realistic foundation. By the time Lam consented to the search she had been told she was not under arrest and had no rea-

son to believe she would again be taken into custody. The State met its burden to prove voluntary consent in this case. Thus, the district court did not err in overruling defendant's motion to suppress the evidence found during the second search, and it was properly admitted at trial.

III. *Arresting officers' testimony.* Two of the arresting officers stated that while transporting defendant to the county jail, defendant offered to kill any person of the officers' own choosing as a gesture of good faith, in an attempt to secure his release from custody. Defendant sought to have this testimony suppressed by filing a motion in limine. The court overruled the motion and held the testimony was admissible. The officers were called to the witness stand and testified as to what defendant told them. Defendant objected after the answers on the ground of lack of relevancy and made motions to strike the testimony. These were overruled by the district court.

 Assuming without deciding that error was preserved, we believe that the testimony was highly probative, Iowa Rule of Evidence 401, although admittedly prejudicial to defendant. Iowa R. Evid. 403. We have stated that relevant evidence may be excluded only if its probative value is substantially outweighed by the danger of unfair prejudice. *State v. Cott,* 283 N.W.2d 324, 329 (Iowa 1979). The district court must balance the probative value of the testimony against the possible prejudice; such a decision only will be reversed for an abuse of discretion. *State v. Cassady,* 243 N.W.2d 581, 583 (Iowa 1976).

This evidence had probative value because it tended to establish Holland's guilt and his general attitude towards these crimes. Although it was unfavorable to defendant, we believe that the probative value of this evidence substantially outweighed the danger of unfair prejudice. We find no abuse of discretion here and consequently hold the ruling of the district court was proper.

IV. *Disposition.* Because we have found no reversible error occurred on any of the points raised on this appeal, the judgment of the district court is affirmed.

AFFIRMED.