NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

19-P-595                                          Appeals Court

COMMONWEALTH  vs.  JOHN F. DAVENPORT.

No. 19-P-595.

Norfolk.      January 15, 2020. - April 8, 2020.

Present:  Wolohojian, Milkey, & Shin, JJ.


Dangerous Weapon.  Words, "Vehicle," "Control."


Complaint received and sworn to in the Stoughton Division
of the District Court Department on January 26, 2018.

The case was heard by Paul McCallum, J.


Meghan K. Oreste for the defendant.
Laura A. McLaughlin, Assistant District Attorney, for the
Commonwealth.


SHIN, J.  After a jury-waived trial, the defendant was

convicted of carrying a dangerous weapon (a spring-loaded knife)

on his person or under his control in a vehicle.  See G. L.

c. 269, § 10 (b).  The principal issue before us is whether

there was sufficient evidence to show that the defendant's

camper, which was affixed to his pickup truck, qualifies as a

"vehicle" under the statute.  This particular camper is not freestanding in the sense that it does not have a driving cab or wheels, but instead is a type of attachment designed to rest on top of the pickup truck, with its outer dimensions not exceeding those of the truck.  We conclude that there was sufficient evidence to show that the camper, as affixed to the truck, is a vehicle or part of a vehicle within the meaning of G. L. c. 269, § 10 (b), and that there was also sufficient evidence that the knife was under the defendant's control in the vehicle.  We therefore affirm.

Background.  We recite the facts, which are largely undisputed, in the light most favorable to the Commonwealth. See Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).

On January 24, 2018, Avon Police Detective Lawrence Donovan interviewed a woman about an incident involving her and the defendant.[1]  Based on what he learned, Donovan issued a broadcast two days later for the defendant's vehicle, a white Ford pickup truck with a camper attached.  That same day, the Raynham Police Department responded that the defendant's vehicle had been located in the parking lot of a Walmart store in Raynham.

Donovan arrived at the Walmart store in the early afternoon and saw the defendant's pickup truck and camper in the parking

---

[1] The record reveals no details about the nature of the incident.

lot.  The camper was hooked up to a generator, which was outside and running.  Donovan knocked on the door of the camper, and the woman with whom he had previously spoken opened the door and stepped outside.  Donovan was unable to see anyone else inside and continued knocking while yelling for the defendant to come out.  After twenty to thirty minutes, the defendant did so and was placed under arrest.

The pickup truck and camper were secured, locked, and transported to the Avon police station.  A few days later, Donovan executed a search warrant and found a spring-loaded knife with a four-inch blade in the camper's sleeping area.  Deoxyribonucleic acid (DNA) testing revealed the defendant to be the major contributor to a swab taken from the knife's handle.

Photographs taken of the camper show that it was affixed, partly with bungee cords and ropes, to the bed and roof of the pickup truck.  The camper has both a kitchen area and a sleeping area.  It does not have its own driving cab, and there is no access to it from the truck; the only access is through a door in the rear.  Donovan testified that the defendant had lived in the camper, while parked in the lot of a Walmart store in Avon, for some unspecified period of time.[2]

---

[2] According to Donovan, Walmart stores, specifically the one in Avon, allow recreational vehicles and campers to park overnight in their lots.

Discussion. To establish a violation of G. L. c. 269, § 10 (b), the Commonwealth must prove that a defendant knowingly "carrie[d] on his person or under his control in a vehicle" a dangerous weapon. The defendant does not contest that the knife found in his camper qualifies as a dangerous weapon under the statute. See id. (prohibiting carrying of "a switch knife, or any knife having an automatic spring release device by which the blade is released from the handle, having a blade of over one and one-half inches"). He argues, however, that the camper is not a "vehicle" within the meaning of the statute and that, even if it is, the Commonwealth failed to prove that the knife was "under his control in a vehicle." We address his arguments in turn.

1. "Vehicle." Because the statute does not define "vehicle," we look to the word's "ordinary meaning . . . to discern the Legislature's intent." Commonwealth v. Rodriguez, 482 Mass. 366, 368 (2019). See Commonwealth v. Fragata, 480 Mass. 121, 125 (2018). A vehicle is commonly understood to be "[a] device, such as a car or sled, for carrying passengers, goods, or equipment; conveyance." American Heritage Dictionary 1340 (2d College ed. 1982). See Webster's Third New International Dictionary 2538 (1993) ("a means of carrying or transporting something: conveyance"); Black's Law Dictionary 1868 (11th ed. 2019) ("An instrument of transportation or

conveyance"; "[a]ny conveyance used in transporting passengers or things by land, water, or air").  A camper that is affixed to a truck is a means of transporting people and things and, as such, is a vehicle or at least part of a vehicle under the common definition.

We disagree with the defendant's suggestion that his camper, though attached to his truck, cannot be considered a vehicle because it does not have its own driving cab.  The common definition of vehicle as set out supra is not limited to conveyances that run on motors.  Rather, motor vehicles are a subset of vehicles, as evidenced by the Legislature's many uses of the term "motor vehicle" in other statutes.  See, e.g., G. L. c. 90, § 1 (defining "motor vehicles" generally as "vehicles constructed and designed for propulsion by power other than muscular power including such vehicles when pulled or towed by another motor vehicle").

Our interpretation is also consistent with the purpose of G. L. c. 269, § 10 (b), which is "to outlaw the carrying of those [weapons] which are primarily designed for stabbing human beings or for other unlawful objectives."  Commonwealth v. Garcia, 82 Mass. App. Ct. 239, 246-247 (2012), quoting Commonwealth v. Miller, 22 Mass. App. Ct. 694, 696 (1986).  A camper that is attached to a motor vehicle is equally capable as a motorized camper of "carrying" -- i.e., "bear[ing] or

convey[ing] from one place to another," American Heritage Dictionary 243 -- a prohibited weapon. By analogy, all the cars comprising a train, and not just the locomotive car, would qualify as vehicles or the constituent parts of a vehicle. Nor do we think it matters whether the weapon would be accessible during transport, to the extent the defendant so argues, because accessibility is not required to establish that a weapon was under a defendant's control in a vehicle. Cf. Commonwealth v. Collins, 11 Mass. App. Ct. 583, 586 (1981) (sufficient evidence to support convictions of unlawful carrying of firearm under G. L. c. 269, § 10 [a], where firearms were found in trunk of car); Commonwealth v. White, 5 Mass. App. Ct. 398, 402 (1977) (judge did not err in declining to charge jury that firearm must "be accessible" to constitute "control in a . . . vehicle" under § 10 [a]).

The defendant further contends that his camper cannot be considered a vehicle because he was using it as a residence. We perceive his argument to be twofold: that G. L. c. 269, § 10 (b), can never be applied to a vehicle that also serves as one's residence; and that it cannot be applied on the facts of this case because the camper was set up as a residence when the defendant was arrested. The first of these arguments fails because, unlike § 10 (a), which prohibits the unlawful carrying of firearms, § 10 (b) contains no residence exception. Cf.

G. L. c. 269, § 10 (a) (1) (exception for possessing firearm while "being present in or on . . . residence or place of business"). For this reason the defendant is not aided by State v. Erickson, 362 N.W.2d 528, 532-533 (Iowa 1985), where the issue was the meaning of a "dwelling" exception to an Iowa statute prohibiting the carrying of a revolver.[3]

The defendant's second argument fails because the evidence was sufficient to show that he used the camper as a means of transport, even though he also used it at times as a residence. Indeed, the judge indicated that he was drawing that inference. The facts and context in Commonwealth v. Upton, 394 Mass. 363 (1985), on which the defendant relies, are very different. There, the court held, in the context of a motion to suppress, that the automobile exception did not apply to a motor home that the defendant used as a residence and that was parked on his family's private property, within a foot of his family's house, enclosed by a six-foot-high stockade fence. See id. at 378-379. We need not pass on whether a motor home or camper would qualify as a vehicle in those circumstances because here the

---

[3] While the court in Erickson, 362 N.W.2d at 532, stated that "[t]he dwelling exception reaches habitations like house trailers, campers, and motor homes when they are being used in circumstances analogous to those in which a dwelling is used," it ultimately held that the defendant's "truck was not transformed from a vehicle into a dwelling when [he] drove onto the shoulder of the exit ramp to take a nap," id. at 533.

Commonwealth provided evidence that the defendant drove his truck, with the camper attached, from Avon to Raynham. The judge was thus warranted in finding that the defendant was using the camper as a vehicle. Cf. California v. Carney, 471 U.S. 386, 393 (1985) (automobile exception applied to mobile home in parking lot because it was "readily mobile" and "so situated that an objective observer would conclude that it was being used not as a residence, but as a vehicle").

Finally, the defendant's reliance on the rule of lenity is to no avail. As there is no ambiguity in the statutory language, the rule of lenity does not apply. See Commonwealth v. Wassilie, 482 Mass. 562, 572 (2019).

2. "Control." We have no difficulty concluding that the Commonwealth met its burden of proving that the knife was under the defendant's control in the vehicle. The defendant owned the camper, he was alone inside for twenty to thirty minutes before complying with Donovan's order to leave the camper, the knife was found in the defendant's sleeping quarters, and he was the major contributor to the DNA taken from the knife's handle. This evidence was sufficient to establish that the defendant had the requisite control over the knife. See Collins, 11 Mass. App. Ct. at 586 (evidence sufficient to show defendant's knowledge of and control over firearms found in trunk of car, given "defendant's ownership and operation of the car, his

possession of ammunition which fit two of the guns, his evasive statements regarding access to the trunk, and his admission that he had assisted in packing the trunk").

<u>Judgment affirmed</u>.