**Bobby Patrick MITCHELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 6-87-042-CR.**

Court of Appeals of Texas, Texarkana.

Aug. 9, 1988.

Steve Kattner, Longview, for appellant.

David Lee Bridges, Dist. Attys. Office, Gilmer, for appellee.

PER CURIAM.

Bobby Patrick Mitchell appeals his conviction for possession of a prohibited weapon (fully automatic firearm). He challenges the trial court's denial of his motion to suppress evidence, claiming that his warrantless arrest was illegal, that a subsequent entry into his home by a deputy sheriff was illegal, and that the search warrant obtained as a result of information gained during the deputy's entry into his home was therefore invalid.

Mitchell's motion to suppress evidence was considered by the trial court at a pretrial hearing. The State's sole witness, Deputy Sheriff Jerry Kuhn of Upshur County, testified that he received a request from Sergeant Bless of the Upshur County Sheriff's Department to meet him to check out a report that a stolen pickup truck was parked at Mitchell's residence. A few hours later, Bless, Kuhn and two other officers arrived at the residence in three cars. They observed a vehicle matching the description of the pickup truck reported stolen parked in the front yard of Mitchell's home. Using a loudspeaker, the officers requested that the occupants of the house come into the yard. Mitchell and two others, David Wilkins and Vicky

Bryan, came out of the house and were met in the yard by the officers.

After speaking briefly to Mitchell in Kuhn's presence, Sergeant Bless arrested Mitchell without a warrant for unauthorized use of a motor vehicle. Mitchell then asked Wilkins to lock the door to his house. Deputy Kuhn then told Wilkins that if he was going into the house, he (Kuhn) wanted to go with him. Neither the appellant nor Wilkins responded to Kuhn's statement.

Kuhn testified that he had no specific knowledge that Wilkins was dangerous. He further testified, however, that he had previously arrested Mitchell for possession of a weapon and had been told that Mitchell kept firearms in his home. For those reasons and because he knew the type person Mitchell "runs with," he was concerned that if one of the persons with Mitchell went into the house unescorted, he might come out with a firearm.

Rather than simply locking the door as he had been requested to do by the appellant, Wilkins entered the house. Deputy Kuhn and Constable Jenkins stepped just inside the door and stood there observing Wilkins as he went into the kitchen to turn off a light. Kuhn testified that while standing inside he detected the odor of marihuana, noticed what appeared to be drug paraphernalia on the floor of the room in which he was standing, and also saw on a card table what he suspected to be drugs. Kuhn further testified that he took a few steps toward the material for a closer look, but that he did not touch the items he observed.

After Kuhn, Jenkins and Wilkins left the house, Kuhn and another deputy prepared an affidavit for a search warrant, basing it on the items Kuhn had observed. The officers obtained the warrant and searched the house. They found, inter alia, the prohibited weapon, specifically a semi-automatic pistol connected so as to be fully automatic.

Mitchell moved to suppress the evidence discovered under the search warrant. The trial court denied Mitchell's motion, and Mitchell thereafter entered into a plea bargain and pleaded guilty to the charge. The trial court sentenced Mitchell to ten years' confinement in the Texas Department of Corrections and a $1,000.00 fine. The confinement was probated for a period of ten years. The trial court granted permission to appeal the denial of the pretrial motion.

Mitchell argues that his warrantless arrest and Deputy Kuhn's initial intrusion into the house were illegal; that the search warrant based upon Kuhn's cursory view was also illegal; and that the evidence obtained under the search warrant therefore should have been suppressed.

## THE ARREST WITHOUT A WARRANT

Mitchell contends that there were no exigent circumstances to justify his warrantless arrest for unauthorized use of a motor vehicle. He argues that, during the few hours' delay from the time that the officers were advised that a stolen pickup was parked at his house and the time the officers arrived there, an arrest warrant could have been obtained. Kuhn testified that an arrest warrant was not obtained before arrival because they were not initially sure that the vehicle reported stolen was parked at Mitchell's residence.

Kuhn further testified that when he and the other officers drove by appellant's home, they sighted from the road the pickup which had been reported as stolen; that someone looked out the window of appellant's residence when they drove by; that for that reason they decided to "move in" without a warrant; that the front door was the only exit from the house; that no one came out of the residence to try to move the pickup; that a judge was available to issue an arrest warrant if they had called him; and that they could have obtained a search warrant if they had wanted to.

■ As a general rule, police officers must always obtain an arrest warrant prior to taking someone into custody. *Dejarnette v. State,* 732 S.W.2d 346 (Tex.Crim. App.1987). This rule is not constitutionally mandated, but is a product of legislative action. *Vasquez v. State,* 739 S.W.2d 37, 41 (Tex.Crim.App.1987), and authorities cited therein.

▮ Warrantless arrests are authorized by various Texas statutes. Under Tex.Code Crim.Proc.Ann. art. 18.16 (Vernon 1977), a peace officer has a right to prevent the consequences of theft by seizing any stolen personal property and bringing it, with the supposed offender, before a magistrate for examination. To do so, however, the officer must have probable cause. *Vasquez v. State, supra,* at 44. The test for determining probable cause for a warrantless arrest is whether, at the moment of arrest, the officer acted upon knowledge based on reasonably trustworthy information that would warrant a reasonable and prudent person to believe that the person arrested had committed or was committing a crime. *Id.*

The record in the instant case reflects that only the following facts were known to the officers when Mitchell was arrested:

1. A pickup truck bearing a specific description and license number had been reported stolen to the Upshur County Sheriff's Department.

2. A pickup truck matching the description and bearing the license number of the allegedly stolen vehicle was parked at Mitchell's residence.

3. Mitchell, Wilkins and Bryan came out of the residence on loudspeaker demand of the officers.

Although presence of the allegedly stolen vehicle was some evidence that an offense had been committed by *some* person, there is no evidence in the record to demonstrate why the officers believed that Mitchell, rather than either of the other two occupants of the residence, was the person who committed the offense.

These facts and circumstances were not sufficient to authorize a reasonable person to believe that Mitchell stole the pickup. The warrantless arrest was thus not authorized under Article 18.16.

▮ The Texas Code of Criminal Procedure sets forth other circumstances under which a warrantless arrest may be made. *See* Tex.Code Crim.Proc.Ann. arts. 14.01, 14.02, 14.04 (Vernon 1977) & art. 14.03 (Vernon Supp.1988). Article 14.01(b) provides that a peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view. Lacking identification of Mitchell as the offender, the officers were not justified under Article 14.01(b) in arresting him without a warrant.

▮ Article 14.03(a)(1) provides that persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony may be arrested without a warrant. The presence of a stolen vehicle in Mitchell's yard can reasonably be considered to qualify the yard and house as a "suspicious place." As previously noted, however, there is no evidence in the record indicating that, of the three people in the house, Mitchell was the person the officers had probable cause to believe had stolen the vehicle. The record shows only that, after Mitchell and the two others exited the house, Sergeant Bless spoke with Mitchell briefly in Deputy Kuhn's presence and then arrested him. Bless did not testify at the suppression hearing, and there is nothing to show what, if anything, Mitchell said to him or what else may have supported Bless' decision to arrest Mitchell rather than one or both of the other occupants of the house. Thus, the warrantless arrest was not justified under Article 14.03(a)(1).

▮ Article 14.04 provides that when a peace officer has satisfactory proof that a felony has been committed and that the offender is about to escape, so that there is no time to procure a warrant, such officer may, without a warrant, pursue and arrest the accused. The officers were entitled to rely on the report to the sheriff's department that a pickup had been stolen and to conclude that a felony theft had been committed by someone. It was not necessary for the State to prove that the suspect was actually about to escape or that there was no time to procure a warrant. Article 14.-04 only requires the State to show that the officers were acting upon satisfactory information from a credible person that an escape was imminent so that there was no time to obtain a warrant. *Maixner v. State,* 753 S.W.2d 151 (Tex.Crim.App.1988).

There is no credible evidence that an escape was imminent or there was no time to obtain a warrant. *See Dejarnette v. State, supra,* at 351. To the contrary, Deputy Kuhn testified that a judge was available and that the officers could have obtained an arrest warrant if they had wanted to do so. Under these facts, the arrest was not justified under Article 14.04.

We conclude that the State has failed to demonstrate that the warrantless arrest of Mitchell was justified under any exception to the general rule requiring police officers to obtain an arrest warrant prior to taking someone into custody.

## THE CURSORY SAFETY CHECK

We must now determine whether the cursory safety check conducted by Deputy Kuhn and a constable immediately after Mitchell's arrest was lawful. If Kuhn had no right to be where he was when he observed items later seized under a search warrant, the items seized were tainted and should have been suppressed. The State urges that Deputy Kuhn entered the residence only for the purpose of ensuring the safety of the officers at the scene while David Wilkins was inside turning off the lights before locking the house after Mitchell's arrest.

The basic purpose of the Fourth Amendment is to safeguard the privacy and security of individuals against arbitrary intrusion by government officials, *Vasquez v. State, supra,* and the unauthorized physical entry of the home is the principal act the amendment is designed to prevent. *United States v. United States District Court,* 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972). The United States Supreme Court has written that "the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York,* 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980). Moreover, the warrant requirement is not a ritual which can be ignored because it may be inconvenient. *United States v. Morgan,* 743 F.2d 1158, 1168 (6th Cir.1984). A cursory safety check, however, is a recognized exception to that warrant requirement. *United States v. Kolodziej,* 706 F.2d 590, 596–97 (5th Cir.1983).

■ To fall within the cursory safety check exception, the State must show that there was a serious and demonstrable potentiality for danger. *Id.,* at 596, *citing United States v. Smith,* 515 F.2d 1028, 1031 (5th Cir.1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 322 (1976); *see also, Vale v. Louisiana,* 399 U.S. 30, 34, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409 (1970) (the burden is on the government to demonstrate an exigency). Moreover, the arresting officers must have reasonable grounds to believe that there are other persons present inside who might present a security risk. *Vale v. Louisiana, supra.* The cases in which the Fifth Circuit has upheld the exercise of a cursory safety check each present a more compelling threat of danger than that in the instant case. *United States v. Kolodziej, supra,* at 596.

Mitchell argues that there were no articulated facts which demonstrated that a serious threat to the safety of the officers was presented by Wilkins when he entered Mitchell's residence. In support of his argument, Mitchell cites *United States v. Morgan, supra.* In *Morgan,* officers entered a suspect's home without a warrant after he and others had been seen firing automatic weapons in a public park and loading several weapons into a car before they left the park. Further, officers who spotted the car at the suspect's home were warned by radio that the suspect was armed with automatic weapons and considered dangerous. The officers went to the suspect's home and, using a loudspeaker, ordered him to come out. The suspect appeared in the door holding a firearm, but he put it down inside the house before he stepped outside. One of the officers immediately entered the house, found a prohibited weapon, and seized it without a warrant. The State argued that the police conduct constituted a cursory safety check, but the court disagreed, holding that the government had failed to show a serious and

demonstrable potentiality for danger, citing *United States v. Kolodziej, supra.*

■ We have strictly scrutinized the warrantless entry into Mitchell's residence, and conclude that no circumstance was present which would have led a reasonable man to believe that his safety was endangered. Deputy Kuhn testified that Wilkins was a law-abiding citizen and that he had no reason to believe that he was dangerous. The fact that Mitchell owned firearms is also insufficient. At the time Kuhn made the intrusion, Mitchell had already been arrested and was in the custody of the other officers at the scene. Mitchell was clearly thus no threat to the four officers present. *See United States v. Kolodziej, supra,* at 597.

Because there was no serious threat to the officers' safety, the purported cursory safety check intrusion was not permissible as an exception to the requirement of the Fourth Amendment that a search warrant be obtained before the threshold to Mitchell's residence was crossed. Moreover, the State has not challenged Mitchell's contention that the intrusion was without consent.

■ We hold that the fully automatic firearm seized in Mitchell's residence as a result of the search warrant obtained on the basis of Kuhn's observations was the fruit of Kuhn's unlawful intrusion into the residence and was thus inadmissible against Mitchell at his trial. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The trial court erred in overruling Mitchell's motion to suppress evidence.

The judgment of the trial court is reversed and the cause is remanded to the trial court.