**Opinion issued August 2, 2012**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00141-CR

————————————

**JOHN QUANG TRAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Case No. 1193692**

---

## MEMORANDUM OPINION

Appellant John Quang Tran pleaded guilty to possession of one gram or more but less than four grams of cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.115(c) (West 2010). In accordance with a plea agreement,

the trial court sentenced him to imprisonment for three years. On appeal, he challenges the trial court's denial of his motion to suppress evidence. We modify the judgment to correct the trial court's special finding or order concerning Tran's right of appeal, and we affirm the judgment as modified.

## Background

Houston Police Department Officers M. Schwartzengraber and T. Riley were on patrol during the night shift when they responded to an alarm at Tran's three-story townhouse. Upon arriving, the officers checked the exterior and saw no signs of forced entry. However, all the lights were turned on inside the townhouse, and one of the exterior doors was open. Officer Schwartzengraber called a supervisor to request a canine unit to assist in searching the interior for a possible burglar. Officer W. Bearden arrived with a dog trained to detect humans. The dog was not trained to detect narcotics. Officer Bearden, exercising his discretion, declined to use the dog to search the townhouse.

After obtaining authorization from a supervisor, all three of the officers conducted a floor-by-floor, room-by-room search of the townhouse proceeding from the first floor to the third floor. They found no one else in the townhouse. The accounts of Officer Riley, who later testified at the hearing on Tran's motion to suppress evidence, and Officer Schwartzengraber, whose affidavit was admitted at the hearing, differ with respect to some details. Officer Riley testified that when

2

he and the other officers first arrived in the second-floor kitchen, they saw a white powdery substance covering some items laying on the countertop. However, they did not stop at that point to investigate because they were still looking for possible intruders. Officer Schwartzengraber's affidavit stated that the officers first noticed the powder-covered items in the kitchen after they had completed the search and were leaving the townhouse.

Aside from the discrepancy concerning when the officers first saw the items on the kitchen counter, both accounts substantially coincided with respect to what they saw: a red plastic plate, a metal kitchen strainer, a cut-off plastic straw, a rolled-up piece of paper, a metal bottle stopper, a plastic bag, and a business card. Officer Riley testified that based upon his training and experience he suspected that the items were narcotics paraphernalia that could be used to prepare or ingest cocaine. He testified that the stopper could be used to crush cocaine, the strainer could be used to sift and cook cocaine, and that the straw and rolled-up paper could be used to snort cocaine. Both officers saw a white powdery substance on the items. Moreover, there was no indication that the powder might be flour used for baking. As Officer Riley explained, "There was no . . . cooling rack, the oven wasn't on, there was no presence of any . . . baking soda, baking powder, anything like that."

3

Officer Riley testified that he and the other officers collectively believed the substance was more likely than not cocaine, but they were not certain. Officer Schwartzengraber's affidavit stated that it was not immediately apparent to them that the residue was cocaine or another narcotic and that the residue could have been anything, including flour.

One of the officers retrieved a narcotics kit from the patrol car to test the powdery substance. Tran and two other men arrived either as the kit was being retrieved or immediately after the field test yielded a result. Tran identified himself as the homeowner, said that his security company had contacted him about the alarm, and produced a driver's license. The officers allowed the other two men to leave once they determined that the men did not live there.

The officers took Tran upstairs to show him what they had found in the kitchen, and they asked him what the residue was. He replied that he did not know what the items were or how they got there. He stated that he had a roommate, but he did not provide a name or other information about his purported roommate. Tran said that the items must have belonged to his roommate or someone else who had been inside the townhouse. According to Officer Schwartzengraber's affidavit, it appeared from his initial search of the townhouse that someone was living in the bedroom on the first floor and that someone was living in one of two

4

bedrooms on the third floor. Officer Riley "couldn't say either way" whether Tran had a roommate.

The field test of the powdery substance yielded a positive result for cocaine. Tran was arrested for possession of cocaine, and he was searched incident to the arrest. The officers found in his front pant pockets two plastic bags containing approximately five grams of cocaine. They also found pills that resembled Xanax.

Tran was indicted for possession of cocaine weighing four grams or more but less than 200 grams, a second-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d). He filed motions to suppress all the seized items and related testimony. The only evidence presented at the suppression hearing was Officer Schwartzengraber's affidavit and Officer Riley's testimony. At the hearing, Tran did not dispute that the officers initially had probable cause to enter the townhouse to search for a possible intruder. However, he argued that the seizure of the cocaine residue for field testing was unconstitutional because by the time of the seizure the officers had finished searching the townhouse for a burglar and were required to leave. But instead of leaving as they were required to do, they undertook a new investigation for a different purpose. Moreover, according to Tran, the plain-view doctrine did not apply in this case because the officers had only a suspicion that the white substance was narcotics, but it just as easily could have been a legal substance such as sugar, flour, or baking soda. Tran also argued

5

that even if the seizure of the residue was lawful, his warrantless arrest was not. He contended that the officers did not have probable cause to believe that Tran possessed the items in the kitchen simply because he lived there.

At the close of the hearing, the trial court stated that Officer Riley's "live testimony just seems to hold more credibility than the affidavit does." It then orally pronounced multiple findings of fact. The trial court found that Officer Riley saw what he believed to be a controlled substance on the plate when he and the other officers first entered the kitchen. It found that although Officer Riley did not know that the substance was cocaine, he acted as a "reasonable law officer" with his training and experience in believing that the substance was cocaine and in seizing it. It further found that the warrantless arrest was "based on their belief and [Tran] saying he owned the home, [and] on the cocaine that was sitting out on the plate on the counter of the kitchen." The trial court then denied the motion to suppress "based on those specific findings of fact."

Tran pleaded guilty to possession of cocaine weighing one gram or more but less than four grams, a third-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c). The plea agreement reflects an agreed punishment of three years in prison. The trial court signed a judgment reflecting Tran's guilty plea and agreed sentence of three years. Tran filed a notice of appeal the same day.

6

**Analysis**

Tran contends that the trial court erred in denying his motion to suppress evidence, and he raises two issues. In his first issue, he argues that the seizure of the cocaine in the kitchen was unlawful because it was not immediately apparent to the officers that the residue was an illegal substance, and because by that point the officers were no longer lawfully present on the premises. In his second issue, Tran argues that the warrantless arrest was unlawful because the officers did not have probable cause to believe that he, as opposed to somebody else, possessed the cocaine residue, nor were there exigent circumstances to justify the arrest.

The State argues that because it was immediately apparent to Officer Riley that the residue found in plain view was likely cocaine, the officers were permitted to seize it for field testing. The State further argues the arrest was lawful because Tran's statement that he owned the townhouse and lived there, coupled with Officer Riley's inability to determine whether Tran had a roommate, allowed the police to reasonably believe that Tran possessed the cocaine residue.

The Code of Criminal Procedure prohibits admission of unlawfully obtained evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005); *Wilson v. State*, 311 S.W.3d 452, 458–59 (Tex. Crim. App. 2010). In reviewing the trial court's ruling on a motion to suppress evidence, we apply a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We

7

give almost total deference to the trial court's determination of historical facts that depend on credibility, while we conduct a de novo review of the trial court's application of the law to those facts. *Id.* In a hearing on a motion to suppress, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex Crim. App. 2000). "This is so because it is the trial court that observes first hand the demeanor and appearance of a witness, as opposed to an appellate court which can only read an impersonal record." *Id.* Thus, with regard to those facts that the trial court explicitly found, we defer to those explicit findings so long as they are supported by the record. *State v. Gray*, 158 S.W.3d 465, 467 (Tex. Crim. App. 2005). With regard to remaining facts not explicitly found by the trial court, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supporting its ruling so long as those findings are supported by the record. *Ross*, 32 S.W.3d 855. We must sustain the trial court's ruling if it is correct under any theory of law applicable to the case. *Id.* at 855–56.

## I.    Seizure

The Fourth Amendment guarantees the right of individuals to be "secure in their persons, houses, papers and effects against unreasonable searches and seizures." U.S. CONST. amend. IV. A warrantless police search of a residence is

8

presumptively unreasonable. *Guiterrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007) (citing *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 1380 (1980)). However, when officers are lawfully on the premises and come upon evidence of a crime discovered in plain view, "it would often be a needless inconvenience, and sometimes dangerous—to the evidence or to the police themselves—to require them to ignore it until they have obtained a warrant particularly describing it." *Williams v. State*, 668 S.W.2d 692, 700 (Tex. Crim. App. 1983) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467–68, 91 S. Ct. 2022, 2039 (1971)). The plain-view doctrine authorizes warrantless seizure of evidence found in plain view when (1) law enforcement officers are lawfully present in the location where the evidence is found and (2) it is immediately apparent that the seized item constitutes evidence, that is, there is probable cause to associate the item with criminal activity. *See Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000). "Significantly, a police officer's subjective motive will never invalidate objectively justifiable behavior under the Fourth Amendment." *Id.* at 542 (citing *Whren v. United States*, 517 U.S. 806, 812, 116 S. Ct. 1769, 1774 (1996)).

## A. Lawful presence

Tran does not dispute that the police had lawfully entered the residence when they were initially looking for an intruder. He argues, however, that that

9

their lawful presence "was limited to the exigency for which they entered—to search for a burglar" and that "when they decided to conduct further investigation to determine what the residue was, they no longer had a legitimate reason to be in the townhome." He points out that one officer actually left the townhouse to retrieve the testing kit. He asserts that the reentry was justified only if the officers had probable cause to believe that the substance was an illegal narcotic, but the officers evidently did not have such a probable cause because they needed the field test to determine whether it was cocaine.

When police officers are lawfully on private premises pursuant to a legitimate exception to the Fourth Amendment requirement of a warrant, they may seize anything they discover in plain view on those premises if it is immediately apparent to them that it constitutes contraband, without the necessity of obtaining a warrant to justify the seizure. *State v. Dobbs*, 323 S.W.3d 184, 187 (Tex. Crim. App. 2010) (citing *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S. Ct. 2130, 2136–37 (1993)). The rationale for this rule is that "if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment—or at least no search independent of the initial intrusion that gave the officers their vantage point." *Dickerson*, 508 U.S. at 375, 113 S. Ct. at 2136–37. Thus, "[a]n investigation that does not impinge upon a

defendant's legitimate privacy or possessory interest does not implicate Fourth Amendment protections." *Dobbs*, 323 S.W.3d at 188 n.11 (citing *Illinois v. Caballes*, 543, U.S. 405, 125 S. Ct. 834 (2005)).

The trial court credited Officer Riley's testimony that he saw the suspicious items in the kitchen during the initial search of the townhouse, which means he first saw those items during a time frame in which Tran does not dispute the officers' lawful presence. Moreover, Officer Riley testified that even before testing the substance on the items, he believed that it was narcotics. Thus, there is evidence in the record to support the trial court's implied finding that the officers developed probable cause to seize the substance while they were lawfully on the premises and that their further investigation "did not entail any greater intrusion on the premises . . . than the intrusion already legitimately underway." *Dobbs*, 323 S.W.3d at 188. Tran's possessory interest in the trace amount of suspected cocaine that was seized for testing was compromised, but legitimately so because the officers had already developed probable cause to believe that it was contraband. *See id.* Therefore, based upon the trial court's express findings and implied findings reasonably supported by the evidence, *see Gray*, 158 S.W.3d at 467, *Ross*, 32 S.W.3d 855, the further investigation undertaken by the officers in this case did not involve an unjustifiedly incremental search or seizure.

Moreover, contrary to part of Tran's argument, the fact that one of the officers left the townhouse to retrieve a testing kit before reentering is not dispositive of whether the police required additional probable cause to reenter the premises. *See Johnson v. State*, 226 S.W.3d 439, 446 (Tex. Crim. App. 2007) (rejecting argument that officers make distinct "visits" each time that they step over residential threshold during an initial investigation).

We hold that there was sufficient evidence presented at the hearing to support the trial court's implied finding that the officers were lawfully present in the location where the evidence was found.

## B. Immediately apparent

According to Tran, it was not immediately apparent to the officers that the residue in the kitchen was an illegal substance when they seized it for field testing. He argues that the fact that the powdery substance was found in the kitchen meant that it was no more likely cocaine than a similar-looking legal substance, like flour, baking soda, or sugar. Thus, Tran reasons, the officers had only a mere suspicion or hunch about the nature of the substance, and they therefore lacked probable cause to seize the residue for field testing.

The requirement of the plain-view doctrine that it be "immediately apparent" to an officer that a substance is contraband does not imply "an unduly high degree of certainty." *Williams*, 668 S.W.2d at 700 n.12 (quoting *Texas v. Brown*, 460 U.S.

12

730, 741, 103 S. Ct. 1535, 1543 (1983) (plurality op.)); *see also Joseph v. State*, 807 S.W.2d 303, 308 (Tex. Crim. App. 1991) (noting that "plain view analysis does not require actual knowledge of incriminating evidence"). Rather,

> [i]t merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," *Carroll v. United States*, 267 U.S. 132, 162, 45 S. Ct. 280, 288, 69 L. Ed. 543 (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required. *Brinegar v. United States*, 338 U.S. 160, 176, 69 S. Ct. 1302, 1311, 93 L. Ed. 1879 (1949).

*Miller v. State*, 667 S.W.2d 773, 777 (Tex. Crim. App. 1984) (quoting *Brown*, 460 U.S. at 742, 103 S. Ct. 1543 (plurality op.)). "An officer may rely on his training and experience to draw inferences and make deductions that might well elude an untrained person." *Nichols v. State*, 886 S.W.2d 324, 326 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (citing *Brown*, 460 U.S. at 746, 103 S. Ct. at 1545 (plurality op.)).

Officer Riley testified that he "didn't know for a hundred percent" that the substance was illegal but that he and the other officers collectively believed prior to testing that it was cocaine. He stated that the assorted items could be used to prepare and ingest cocaine and that there were no "typical baking things" nearby like a cooling rack or baking soda.

Officer Riley was permitted to rely on his experience and training—which taught him that the particular assortment of objects found in the kitchen is commonly used to prepare and ingest narcotics—to determine the probable nature of the powdery substance. *See Nichols*, 886 S.W.2d at 326. His objectively reasonable belief that the substance more likely than not was cocaine established probable cause for the seizure. *See Miller*, 667 S.W.2d at 777 (holding that officer had probable cause to seize from suspect's pocket a bag visibly containing white powder that officer suspected was some type of narcotic even though he did not know exactly what it was and officer testified that it could have been powdered sugar). Moreover, the field test, which involved collecting a trace amount of residue found in plain view, did not infringe any legitimate interest in privacy or property that was not already compromised by the officers' initial search of the townhouse, the lawfulness of which Tran does not challenge. *See United States v. Jacobsen*, 466 U.S. 109, 123–25, 104 S. Ct. 1652, 1661–63 (1984) (holding that a "chemical test that merely discloses whether or not a particular substance is cocaine does not compromise any legitimate interest in privacy" and that "the 'seizure' could, at most, have only a *de minimis* impact on any protected property interest"). We hold that there was sufficient evidence presented at the hearing to support the trial court's implied finding that it was immediately apparent to the officers that the substance was an illegal narcotic.

We hold that the trial court did not err in denying Tran's motion to suppress evidence with respect to the seizure of the residue found on the kitchen items. We accordingly overrule Tran's first issue.

## II.    Arrest

In his second issue, Tran argues that his warrantless arrest was unlawful. He argues that the police did not have probable cause to believe that he—as opposed to somebody else who lived at or had been present in the townhouse—possessed the cocaine found in the kitchen. Tran emphasizes that he was not present when the cocaine residue was found, he told the officers that he had a roommate, and he never admitted to possessing the cocaine. He asserts that the police found evidence indicating that more than one person lived at the townhouse. Tran also relies on Article 14.05 of the Code of Criminal Procedure, which provides that an officer may not enter a residence to make a warrantless arrest unless the resident consents to the entry or exigent circumstances require the entry. TEX. CODE CRIM. PROC. ANN. art. 14.05 (West 2005).

The State argues that the officers had probable cause to arrest Tran based on their knowledge that cocaine was in the house and Tran's statement that he owned the residence. The State also argues that the arrest was authorized under Article 14.01 of the Code of Criminal Procedure, which authorizes an officer to make a warrantless arrest of someone who has committed an offense "in his

15

presence or within his view." TEX. CODE CRIM. PROC. ANN. art. 14.01 (West 2005).

"Generally, a warrantless arrest is, pursuant to the Fourth Amendment, unreasonable *per se* unless the arrest fits into one of a 'few specifically defined and well delineated exceptions.'" *Torres v. State*, 182 S.W.3d 899, 901 (Tex. Crim. App. 2005) (quoting *Dickerson*, 508 U.S. at 372, 113 S. Ct. at 2135). In Texas, a police officer may arrest an individual without a warrant only if there is probable cause with respect to that individual and the circumstances of the arrest coincide with an exception specified in Articles 14.01 through 14.04 of the Code of Criminal Procedure. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002); *Lunde v. State*, 736 S.W.2d 665, 666 (Tex. Crim. App. 1987). The burden is on the State to prove the existence of probable cause to justify a warrantless arrest. *Amores v. State*, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991). Probable cause exists when the totality of facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information is sufficient to warrant a man of reasonable caution in the belief that a particular person has committed or is committing an offense. *Id.*

The State contends that Article 14.01 of the Code of Criminal Procedure authorized the warrantless arrest in this case. However, our review of the lawfulness of Tran's arrest is not limited to that provision since we must affirm the

16

trial court's ruling if it is correct under any theory of law applicable to the case. *See Ross*, 32 S.W.3d at 855–56. Article 14.03(a)(1) of the Code of Criminal Procedure authorizes a warrantless arrest of "persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony." TEX. CODE CRIM. PROC. art. 14.03(a)(1) (West 2005). This provision "require[s] the legal equivalent of constitutional probable cause." *Amores*, 816 S.W.2d at 413. "[F]ew, if any, places are suspicious in and of themselves. Rather, additional facts available to an officer plus reasonable inferences from those facts in relation to a particular place may arouse justifiable suspicion." *Johnson v. State*, 722 S.W.2d 417, 421 (Tex. Crim. App. 1986), *overruled on other grounds*, *McKenna v. State*, 789 S.W.2d 797, 800 (Tex. Crim. App. 1989). Thus, "[t]he determination of whether a place is a 'suspicious place' is a highly fact-specific analysis." *Dyar v. State*, 125 S.W.3d 460, 468 (Tex. Crim. App. 2003). "A place can be suspicious because: (1) an eyewitness or police officer connected the place to the crime; (2) a crime occurred there or the police reasonably believed a crime occurred there; (3) specific evidence directly connected the defendant or the place with the crime; or (4) appellant's behavior was a factor in determining whether a place was suspicious." *Goldberg v. State*, 95 S.W.3d 345, 363 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). For example, this court held that an SUV that had been spotted earlier at a crime scene rendered

the residence at which it was parked a suspicious place. *Id.* Another court of appeals similarly held that the presence of a shot, bleeding body on a front yard rendered the adjoining residence a suspicious place. *Douglas v. State*, 679 S.W.2d 790, 791 (Tex. App.—Fort Worth 1984, no pet.).

In this case, the officers discovered a residue in Tran's kitchen that tested positive for cocaine. The presence of cocaine, being evidence of a crime, rendered the townhouse a suspicious place. *See Goldberg*, 95 S.W.3d at 363; *Douglas*, 679 S.W.2d at 791. Upon arriving at the townhouse, Tran identified himself as the homeowner and stated that he lived there. His presence and statements were circumstances that directly connected him with the suspicious place. *See* TEX. CODE CRIM. PROC. ANN. art. 14.03(a)(1); *Goldberg*, 95 S.W.3d at 363. Although Tran told officers that he had a roommate, he gave no name or other information about the purported roommate. Under these circumstances, the police could have reasonably believed that Tran probably possessed the cocaine. Although the State would have the burden at trial to prove beyond a reasonable doubt an affirmative link between Tran and the cocaine, *see, e.g.*, *Gilbert v. State*, 874 S.W.2d 290, 298 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd), the police did not need to have this high degree of belief to make the arrest. *See Delgado v. State*, 718 S.W.2d 718, 720–21 (Tex. Crim. App. 1986) ("The standard for the legality of a warrantless arrest is not equal to the sufficiency of evidence for a conviction.").

18

Accordingly, we hold that the State met its burden to show that the police had both probable cause and statutory authorization under Article 14.03(a)(1) to arrest Tran.

In an effort to undermine the reasonableness of the officers' belief that Tran possessed the cocaine, Tran emphasizes that he told the officers that he had a roommate, and he asserts that the officers saw indications that more than one person lived there. He relies on *State v. Steelman*, 93 S.W.3d 102, 107–09 (Tex. Crim. App. 2002), and *Mitchell v. State*, 756 S.W.2d 71, 73–75 (Tex. App.—Texarkana 1988, no pet.) (per curiam), for the proposition that the officers did not have probable cause to believe that he, as opposed to his purported roommate or someone else, committed the offense.

Contrary to Tran's assertion, the record does not definitively reflect that the police found evidence indicating that more than one person lived at the townhouse. Although it is undisputed that Tran told the police that he had a roommate, Officer Schwartzengraber's and Officer Riley's accounts differed with respect to whether their search of the townhouse verified that more than one person lived there. The trial court made no specific finding on this question. Viewing the evidence in the light most favorable to the trial court's ruling, *see Ross*, 32 S.W.3d at 855, we accept for the purposes of our review Officer Riley's testimony that it was indeterminable whether Tran had a roommate.

We furthermore conclude that *Steelman* and *Mitchell* are distinguishable and do not support Tran's position. In *Steelman*, police received an anonymous tip that drugs were being dealt at Steelman's residence. *Steelman*, 93 S.W.3d at 104. The police knocked at the front door. *Id.* When Steelman emerged, the officers smelled burnt marijuana. *Id.* They rushed in to arrest him and three other men inside. *Id.* The Court of Criminal Appeals held that the officers lacked probable cause to arrest Steelman because, having only smelled marijuana, they "had no idea who was smoking or possessing marijuana, and they certainly had no particular reason to believe that [Steelman] was smoking or possessing marijuana." *Id.* at 109. In this case, the only person who arrived at the residence and identified himself as living there was Tran. This is not a case where the officers "had no idea" who possessed the contraband because they made an arrest before having sufficient reliable information to connect the arrestee with the suspected criminal activity. *See id.* Rather, Tran's admission that he lived at the townhouse, his failure to provide identifying information about a purported roommate, and the fact that the cocaine residue was found in a common area accessible to any resident of the townhouse were circumstances that reasonably showed that Tran was guilty of felony possession of a controlled substance. *See* TEX. CODE CRIM. PROC. ANN. art. 14.03(a)(1).

In *Mitchell*, police officers went to Mitchell's house where a stolen truck was reportedly parked. *Mitchell*, 756 S.W.2d at 72. Finding the truck in the front yard, the police used a loudspeaker to command the occupants to come out. *Id.* Mitchell and two others emerged. *Id.* at 72–73. One of the officers spoke briefly to Mitchell and then arrested him, but the other men were not arrested. *Id.* at 73. The court of appeals concluded that the presence of a stolen vehicle in the front yard "can reasonably be considered to qualify the yard and house as a 'suspicious place.'" *Id.* at 74.

> [H]owever, there is no evidence in the record indicating that, of the three people in the house, Mitchell was the person the officers had probable cause to believe had stolen the vehicle. The record shows only that, after Mitchell and the two others exited the house, Sergeant Bless spoke with Mitchell briefly in Deputy Kuhn's presence and then arrested him. Bless did not testify at the suppression hearing, and there is nothing to show what, if anything, Mitchell said to him or what else may have supported Bless' decision to arrest Mitchell rather than one or both of the other occupants of the house.

*Id.* The court held that the State failed to show that the warrantless arrest was authorized under Article 14.03(a)(1). *Id.*

In this case, Officer Riley testified at the suppression hearing that Tran stated that he lived with a roommate but he failed to provide identifying information about the purported roommate. Officer Riley also testified that he and the other officers allowed the two other men who had arrived with Tran to leave after they determined that the men did not live there. Thus, unlike *Mitchell*, the

21

State in this case presented specific evidence at the suppression hearing to demonstrate the reasonableness of the officers' belief that Tran committed the offense.

With regard to Tran's contention that his arrest ran afoul of Article 14.05 of the Code of Criminal Procedure, the appellate record does not reflect that he advanced this argument in the trial court. No reference to Article 14.05 appears in his original or amended motions to suppress evidence, his memorandum of law in support of the motions, or in the reporter's record of the suppression hearing. Rather, his written motions reflected that he moved to suppress evidence only "pursuant to the Fourth Amendment to the United States Constitution; article I, section 9 of the Texas Constitution; and article 38.23 of the Code of Criminal Procedure." When a defendant's argument to suppress evidence is based on an infringement of constitutional rights rather than a violation of Article 14.05, he does not preserve the latter issue for appellate review. *See Resendez v. State*, 306 S.W.3d 308, 315 (Tex. Crim. App. 2009) (citing *Bucchanan v. State*, 207 S.W.3d 773, 777 (Tex. Crim. App. 2006)); TEX. R. APP. P. 33.1(a). Accordingly, we hold that Tran has waived this issue and we do not address it.

We hold that the trial court did not err in denying Tran's motion to suppress evidence based on his warrantless arrest. Accordingly, we overrule Tran's second issue.

22

**Modification of judgment**

The written judgment of the trial court, under the heading of "special findings or orders," states, "APPEAL WAIVED.  NO PERMISSION TO APPEAL GRANTED."  However, the boilerplate plea agreement signed by Tran, his counsel, the district attorney, and the presiding judge reflects a line crossing out preprinted text stating that the defendant waives any right of appeal that he may have.  Moreover, the "Certification of Defendant's Right of Appeal" form has a checked box next to preprinted text stating that this "is a plea-bargain case, but matters were raised by written motion filed and ruled upon before trial, and not withdrawn or waived, and the defendant has the right of appeal."  *See* TEX. R. APP. P. 25.2(d) (requiring trial court to certify defendant's right of appeal).

The Code of Criminal Procedure and Rules of Appellate Procedure permit a plea-bargaining defendant to appeal matters raised by written motion filed and ruled upon before trial.  *See Shankle v. State*, 119 S.W.3d 808, 811–12 (Tex. Crim. App. 2003) (analyzing TEX. CODE CRIM. PROC. art. 44.02 and TEX. R. APP. P. 25.2(b)).  Moreover, the certification of Tran's right of appeal presumptively reflects whether he has this right, because the certification must reflect whether the defendant has a right of appeal but the judgment need not reflect this finding.  *See Grice v. State*, 162 S.W.3d 641, 645 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (comparing TEX. R. APP. P. 25.2(d) and TEX. CODE CRIM. PROC. art. 42.01,

§ 1 and concluding that a stamped indication of waiver of appeal appearing in judgment was "surplusage"). The State's failure to argue in this court that Tran waived his right of appeal further indicates that there was no understanding that Tran would waive his right of appeal. *See Menefee v. State*, 287 S.W.3d 9, 12 n.12 (Tex. Crim. App. 2009) (relying on trial court's certification of defendant's right of appeal, despite signed waiver of appeal, when State failed to raise issue of waiver); *Willis v. State*, 121 S.W.3d 400, 403 (Tex. Crim. App. 2003) (concluding that record demonstrated appellant's intention to appeal, despite boilerplate waiver in plea agreement, when State failed to assert waiver in court of appeals).

The parties have not addressed the validity of the judgment's special finding or order regarding Tran's right of appeal. Nevertheless, based on our review, we conclude that this portion of the trial court's judgment does not accurately comport with the record. "[A]n appellate court has authority to reform a judgment to include an affirmative finding to make the record speak the truth when the matter has been called to its attention by any source." *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *see also* TEX. R. APP. P. 43.2(b). Because the Code of Criminal Procedure and Rules of Appellate Procedure permit plea-bargaining defendants to appeal rulings on pre-trial motions, the plea agreement reflects that a boilerplate waiver of appeal was crossed through, the trial court certified Tran's right of appeal, and the State does not argue that Tran waived his right of appeal,

24

the record in this case supports modification of the judgment. Accordingly, we modify the trial court's judgment to strike the special finding or order of "APPEAL WAIVED. NO PERMISSION TO APPEAL GRANTED."

## Conclusion

We modify the judgment of the trial court to strike the special finding or order of "APPEAL WAIVED. NO PERMISSION TO APPEAL GRANTED." We affirm the judgment as modified.

Michael Massengale
Justice

Panel consists of Justices Jennings, Massengale, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).